UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:23-cv-12377-IT

| | |
|---|---|
| SCOTT WOOD,<br><br>      Plaintiff<br><br>v.<br><br>CITY OF HAVERHILL, CITY OF HAVERHILL POLICE DEPARTMENT, ANTHONY HAUGH, ROBERT PISTONE, TOWN OF WENHAM, WENHAM POLICE DEPARTMENT, KEVIN DINAPOLI,<br><br>      Defendants | MEMORANDUM OF LAW<br>IN SUPPORT OF DEFENDANTS CITY OF HAVERHILL, CITY OF HAVERHILL POLICE DEPARTMENT, ANTHONY HAUGH, and ROBERT PISTONE'S MOTION TO DISMISS <u>PLAINTIFF'S COMPLAINT</u><br><br>Leave to File Granted on December 27, 2023 |

## I.   **<u>INTRODUCTION</u>**

Plaintiff's Complaint arises from a background investigation conducted into Plaintiff when he applied to be a Police Officer with the City of Haverhill in 2012.  Because the Haverhill Police Department is a civil service department, it is required to select police officer candidates from a "certified" list of persons who have successfully completed an entrance examination, ranked in terms of their grade on the examination and any additional credits or "points" awarded in accordance with the Civil Service Law, G.L. c. 31.  In general, when a civil service police department wishes to hire a lower ranking candidate instead of a higher ranking candidate on the certified list, the higher ranking candidate has the right to appeal this decision to the Civil Service

Commission, pursuant to G.L. c. 31, §2(b), known as a "by-pass" appeal.[1]  Such hearings are open to the public, and result in a public decision that is accessible online.[2]

As a result of the information learned from the background investigation into Plaintiff, the Plaintiff and the City of Haverhill entered into a Memorandum of Understanding ("MOU") whereby Plaintiff agreed to withdraw his application for employment with the Haverhill Police Department, and in exchange, the City of Haverhill agreed that: records related to Plaintiff's application for employment would be disposed of pursuant to the Municipal Records Retention Schedule established by the Supervisor of Public Records for the Commonwealth of Massachusetts;  if information related to Plaintiff was required to be produced for any reason, that Plaintiff would be given at least two weeks prior notice of the release; and  to the degree allowed by law, that the MOU and the circumstances surrounding the creation of the MOU would remain confidential.  Through this MOU, the City was not required to make a decision to by-pass Plaintiff, for which the Plaintiff would have a right to a by-pass appeal.

In any event, several years later, Plaintiff applied once again to be a Police Officer in Haverhill.  He appeared on a certified "Reserve Officer" list of eligible candidates, and was in fact hired as a Reserve Officer.   In 2021, then Police Chief Alan DeNaro obtained temporary authorization from the Massachusetts Municipal Police Training Commission for Plaintiff to work as a Police Officer, despite Plaintiff having not attended a full-time police academy.   That temporary authorization expired in or around December 12, 2021.  Prior to that time, Chief DeNaro

---

[1] See, e.g., https://www.mass.gov/info-details/learn-about-types-of-civil-service-commission-appeals (civil service commission website:  If you are a candidate for a civil service position, and you have been "bypassed" for appointment or promotion by someone ranked lower on the civil service certification used to fill the position, you can file a bypass appeal.")

[2] See, e.g., https://www.mass.gov/info-details/learn-about-the-civil-service-commission-appeals-process (civil service commission website:  "All other hearings (i.e. – bypass appeals, classification, examination appeals, etc.) are open to the public."); see also https://www.mass.gov/civil-service-commission-decisions (civil service commission decisions).

abruptly retired in the summer of 2021, and he was succeeded by retired Deputy Chief Anthony Haugh, who served as Acting Chief temporarily while the City sought to fill the position permanently.  It is the events transpiring in the time frame after Chief DeNaro retired that form the factual bases for this litigation.

In his Complaint, Plaintiff alleges that Defendants City of Haverhill (the "City"), the Haverhill Police Department (the "Police Department"), former Acting Police Chief Anthony Haugh ("Acting Chief"), and current Police Chief Robert Pistone ("Chief") (collectively the "Haverhill Defendants") violated the MOU with respect to the 2013 background report.  Plaintiff asserts nine counts against one or more of the Haverhill Defendants including claims for: 1) Breach of Contract against all Haverhill Defendants (Count I); 2) Intentional Interference with Advantageous Business Relations against the Acting Chief and Chief (Count II); 3) Defamation against the Acting Chief and Chief (Count III); 4) Wrongful Termination in Violation of Public Policy against all Haverhill Defendants (Count IV); 5) Violation of G.L. c. 31, § 1 et. seq. against all Haverhill Defendants; 6) Violation of 42 U.S. C. § 1983 against all Haverhill Defendants (Count VI); 7) Violation of 42 U.S.C. § 1985 against all Haverhill Defendants (Count VII); 8) Violation of G.L. c. 214, § 1B against all Haverhill Defendants; and 9) Violation of Title I the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq. (Count IX).

All of Plaintiff's claims against the Haverhill Defendants must be dismissed. First, Plaintiff's breach of contract claim based on the 2013 MOU must be dismissed because even if the records related to the 2013 investigation into Plaintiff's background had been destroyed, the information learned from that background investigation was still known by the Haverhill Defendants, who were obligated by law to disclose the potentially exculpatory information about Plaintiff to the District Attorney's Office when Plaintiff was appointed as a Reserve Police Officer

by the City of Haverhill.  Second, Plaintiff's wrongful termination claim must be dismissed because not only was Plaintiff not terminated, but Plaintiff by his own admission did not attend a full-time Police Academy, a prerequisite for Plaintiff to work as a Police Officer in the Commonwealth of Massachusetts, in any capacity, as a result of the so-called "Police Reform" Act.  Third, insofar as Plaintiff believes he was terminated from his employment and believes that he was considered to be a civil service employee, Plaintiff failed to exhaust his administrative remedy afforded him because he did avail himself of the grievance process afforded under the collective bargaining agreement nor did he appeal his termination to the Civil Service Commission under G.L. c. 31. Fourth, Plaintiff cannot prevail on his defamation claim, not only because Plaintiff does not identify a statement made by the Haverhill Defendants that he is claiming is false, but also because while Plaintiff objects to the Haverhill Defendants informing the District Attorney's Office of the potentially exculpatory information about him, the information provided to the District Attorney's Office is true and the Haverhill Defendants' statements to the District Attorney's Office are subject to the conditional privilege.  It was not the Haverhill Defendants who unnecessarily, unreasonably, or excessively published unidentified statements about the 2013 background investigation to which Plaintiff objects, but Plaintiff when he filed his lawsuit and spoke to the press.

For the reasons set forth above and in more detail below, the Haverhill Defendants request that this Court dismiss all of the Plaintiff's claims against the Haverhill Defendants.

## II.   <u>FACTS AS PLED IN THE COMPLAINT</u>

The Haverhill Defendants accept the following facts as true for purposes of this motion under Rule 12(b)(6) <u>only</u>.

1. Plaintiff Scott Wood ("Plaintiff") is a resident of the City of Haverhill. Complaint, ¶ 5.

2.  The City of Haverhill is a municipality in the Commonwealth of Massachusetts. The City of Haverhill Police Department is a department within the City of Haverhill and is not a separate legal entity subject to suit from the City of Haverhill.  Complaint, ¶¶ 6, 7.

3.  Anthony Haugh was the former Acting Chief of Police in the City of Haverhill. Robert Pistone is the current Chief of Police in the City of Haverhill.  Complaint, ¶¶ 8, 9.

4.  In April 2012, Plaintiff was a candidate for appointment as a Police Officer in the City of Haverhill and his name appeared as a candidate on the civil service list.  Complaint, ¶ 15.[3]

5.  Then Deputy Chief Donald Thompson conducted a background investigation into Plaintiff that resurfaced instant message conversations between Plaintiff and a former classmate that the Police Department had previously from a criminal investigation into the classmate of Plaintiff's. The background investigation also alleged that Plaintiff engaged in misconduct when he was an employee of Merrimack College and Regis College as well as in a class Plaintiff had taken as part, offered through the Massachusetts Municipal Police Training Committee ("MPTC").  Complaint, ¶¶ 16-18.

6.  In May 2013, Plaintiff and the City entered into a Memorandum of Understanding where Plaintiff would withdraw his application for employment with the Haverhill Police Department. In exchange, the City agreed to dispose of copies of the 2013 background report prepared by Deputy Chief Thomspon after one year in compliance with the Record Retention Schedule of the Supervisor of Public Records for the Commonwealth of Massachusetts.  Complaint, ¶ 19; **Exhibit 1 – MOU.** [4]

---

[3] The Haverhill Police Department is a civil service department, a fact which is undisputed.

[4] The Court may consider the MOU and Waiver attached as Exhibit 1 and 2 hereto on this Motion for Judgment on the Pleadings because the Plaintiff expressly makes reference to both in his Complaint.  See, Beddall v. State Street

7.   In March 2019, Plaintiff's name appeared on a civil service list for appointment as a Reserve Police Officer in the City of Haverhill.  Plaintiff applied for the position. Complaint, ¶ 24.

8.   In late 2019, the Mayor of the City of Haverhill petitioned the City Council to submit a home rule petition to the State Legislature to allow Plaintiff to be appointed as a Haverhill Police Officer even though he was over the maximum age limit.  This special legislation was passed by the State Legislature and signed by the Governor on February 14, 2020.Complaint, ¶ 25.

9.   On March 8, 2021, the City of  Haverhill submitted a request to the Municipal Police Training Committee ("MPTC") for a waiver to allow Plaintiff to work as a full-time Police Officer.  The waiver request was approved by the MPTC on March 17, 2021.   The temporary waiver granted was not to exceed two hundred and seventy (270) days or until the start date of the next available academy session whichever occurs sooner.  Plaintiff's Waiver was set to expire on December 12, 2021. Complaint, ¶ 30; **Exhibit 2 – Waiver.**

10. In March 2020, then Police Chief Alan DeNaro ("Chief DeNaro") had Detective Richard Welch conduct Plaintiff's pre-employment background check;  in his hiring recommendation to the Mayor, Chief DeNaro stated that there were no areas of concern identified related to Plaintiff's hire.  Plaintiff was appointed as a Reserve Police Officer in the City of Haverhill Police Department. Complaint, ¶¶ 26-27..

11. In early March 2021, Chief DeNaro offered Plaintiff a full-time position with the Haverhill Police Department.  Plaintiff agreed to attend the upcoming "Bridge" Academy

---

Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (when a complaint's allegations are expressly linked to a document, the trial court may review the document in deciding a Rule 12 motion); Complaint, ¶¶ 19, 20, 21, 25, 30.

to be certified as a full-time Police Officer.[5]  Plaintiff never attended a Bridge or Full

Time Police Academy. Complaint, ¶ 19.

12. On April 22, 2021, Plaintiff was sworn in as a full-time Haverhill Police Officer.  On

April 23, 2021, Plaintiff was put on a full-time 4 days on, 2 days off schedule to begin on

May 30, 2021.  Complaint, ¶¶ 20, 21

13. On May 28, 2021, Acting Chief Haugh told Plaintiff that because he was supposed to

attend a full-time academy and had not, Plaintiff was being taken off the schedule.

Acting Chief Haugh explained to Plaintiff that the Haverhill Police Department would

not be honoring the agreement that he made with Chief DeNaro. Complaint, ¶¶22, 23, 25.

14.   Acting Chief Haugh asked Plaintiff to attend the full-time academy in July. Plaintiff

explained to Acting Chief Haugh that was not the agreement that he made with the City

when accepting the full-time appointment.  Acting Chief Haugh told Plaintiff that he was

sworn in and personnel action forms were submitted, but the Human Resources Director

never submitted documentation to Civil Service.  Therefore, Plaintiff was not a full-time

officer, but remained a reserve officer. Complaint, ¶ 26.

15. On June 18, 2021, Deputy Chief Stephen Doherty told Plaintiff that he needed to return

his badge and gun and all Police Department related equipment. Complaint, ¶ 30.

16. On June 19, 2021, Plaintiff received a phone call from the Mayor who told him that

Acting Chief Haugh had come to the Mayor's office with a copy of the background

---

[5] As a result of the so-called Police Reform Act, Chapter 253 of the Acts of 2020, prior to serving as a police officer in any capacity, an individual must complete a certified full-time police academy.  Chapter 253 of the Acts of 2020, Section 102(b)-(c).  For those officers like Plaintiff who had only completed a reserve officers police academy, a "bridge" academy program was developed, which provided the necessary additional training to "bridge" an officer who had only attended a reserve (part-time) police academy training (such as Plaintiff), to one who had successfully completed a full time academy course of training.  See https://www.mass.gov/mptc-bridge-academy.  Absent successful completion of a bridge academy or obtaining a waiver of same from MPTC, an individual cannot serve as a sworn police officer in Massachusetts.  Chapter 253 of the Acts of 2020, Section 102.

report and threatened to go to the press.  The Mayor told Plaintiff it was the reason his

badge and gun were taken on June 18, 2021.  Complaint, ¶¶  30, 31.

17.   During the second week of December 2021, Plaintiff met with Chief Pistone and Deputy

Chief Doherty.[6]  Chief Pistone told Plaintiff that someone had leaked a copy of the

background report to the District Attorney's Office.  Plaintiff showed Chief Pistone the

signed MOU with the City.  Chief Pistone told Plaintiff that if Plaintiff resigned from

Haverhill PD, the Chief would not have to turn the 2013 background report over to the

District Attorney's office.  Chief Pistone advised Plaintiff to think over his options.

Complaint, ¶¶ 35-37.

18.   On December 23, 2021, Plaintiff's Counsel communicated with the City's outside

counsel, alleging that the Police Department was interfering with Plaintiff's ability to

work as a Police Officer and that the City, through the actions of Acting Chief Haugh and

Chief Pistone, were violating the 2013 agreement with respect to the former background

report.  Complaint ¶ 38.

19.   Plaintiff has not worked a single shift for the Haverhill Police Department since he was

asked to return his badge and gun.  Complaint, ¶ 39.

20.   On February 15, 2022, Haverhill Police Captain Megan Pare was ordered to investigate

Plaintiff's  "background discrepancy" from the 2013 investigation.  In her report, Captain

Pare reiterated the contents of the 2013 background report and summarized the instant

messages that were discussed in the 2013 background report, attaching them as an exhibit

to her report. The report also summarizes Plaintiff's psych evaluations from other police

---

[6] Defendant Pistone was sworn in as Police Chief on or about July 16, 2021.

departments, of which Plaintiff alleges he did not authorize disclosure. Captain Pare's

report was placed in Plaintiff's personnel file.  Complaint, ¶¶ 43, 48

## III.   <u>LEGAL ARGUMENT</u>

### A.  <u>Standard of Review</u>

To withstand a Motion to Dismiss, the facts alleged in the Complaint "must plausibly

suggest (not merely be consistent with) an entitlement to relief." See <u>Iannacchino</u> v. <u>Ford Motor</u>

<u>Co.</u>, 451 Mass. 623, 635-636 (2008) (quoting <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 557

(2007). While the Court must accept the allegations of the Complaint as true, the Court should

not accept "a wholly conclusory statement of claim … whenever the pleadings [leave] open the

possibility that a plaintiff might later establish some set of undisclosed facts to support

recovery." <u>Iannacchino</u>, 451 Mass. at 636 (quoting <u>Bell Atlantic. Corp.</u>, 550 U.S. at 561).

Rather, the factual allegations in the complaint "must be enough to raise a right to relief above

the speculative level…"  <u>Id.</u> Here, the facts alleged in Plaintiff's Complaint are not sufficient to

raise a right to relief on any of the myriad of claims Plaintiff has brought against the Haverhill

Defendants.

### B.   <u>Breach of Contract</u>

In Count I of his Complaint, Plaintiff alleges that Defendants City of Haverhill, Acting

Chief Haugh and Chief Pistone breached the 2013 MOU by not destroying the 2013 background

investigation and by distributing the report into Plaintiff's background.  Plaintiff also alleges that

the Haverhill Defendants violated the terms of the collective bargaining agreement ("CBA")

between the City and the Union (not Plaintiff) and/or the terms of Plaintiff's employment

pursuant to the Civil Service Laws.  Putting aside the 2013 MOU, Plaintiff does not identify a

specific provision of the CBA he alleges was violated, but regardless Plaintiff cannot prevail on

his claim for breach of the CBA because Plaintiff failed to exhaust the grievance procedure available to him in the CBA. Likewise, Plaintiff cannot prevail on his theory that Haverhill Defendants violated the terms of his employment by violating the Civil Service laws based on the doctrine of "primary jurisdiction" because Plaintiff did not file a complaint with the Civil Service Commission  as required within ten days after his alleged termination from employment pursuant to G.L. c. 31, §§ 41 and 42.

The crux of Plaintiff's Complaint is his allegation that the City violated the 2013 MOU by purportedly not destroying the 2013 background report itself, which led to someone "leaking" the report to the District Attorney's Office and by Captain Pare repeating the content of the confidential background report in her investigation into the "background discrepancies" in the 2013 Report.  Complaint, ¶¶ 35, 41-43. Plaintiff will not be able to prevail on his breach of contract claim based on the MOU because even if the 2013 report had been destroyed, the information contained in it was known to members of the Haverhill Police Department, including Acting Chief Haugh and Chief Pistone, both of whom as Chiefs were required to disclose at least some of the information contained in the 2013 report to the District Attorneys' Office due to their obligation to disclose potential impeachment material about Plaintiff to the District Attorney's Office in the event that Plaintiff  was called to testify as a witness in a criminal proceeding.  See, Brady  v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972).[7]  In fact, the MOU that Plaintiff alleges was breached contemplated

---

[7] Not only were Acting Chief Haugh and Chief Pistone required to disclose the information to the District Attorney for review pursuant to *Brady/Giglio*, the City of Haverhill Ordinance requires that the "Chief of Police shall keep the City Solicitor and the District Attorney informed of all matters that pertain to their respective offices relating to the policies or interests of the City or, to any breach of law or ordinance.  City of Haverhill Ordinance, Chapter 70, § 104.

circumstances where information contained in the background report would need to be produced. Specifically, the MOU states:

> WHEREAS, The City of Haverhill agrees that, should any information related to Wood be required to be produced for any reason (e.g., court order), that Mr. Wood be given at least two weeks prior notice to the release; and

> WHEREAS, [the] nature of this Memorandum is confidential, and the parties agree to maintain confidentiality over the terms of this Memorandum as well as all circumstances surrounding the creation of this Memorandum to the degree allowed for by law;

Exhibit 1. In his Complaint, Plaintiff admits that during a meeting with Chief Pistone (and Deputy Chief Doherty) in December, 2021, Chief Pistone gave Plaintiff notice that he [the Chief] would have to turn over the information from the 2013 background report if Plaintiff did not resign from the Haverhill Police Department.  Complaint, ¶ 36.  The Chief advised Plaintiff to think over his options and get back to him. Complaint, ¶ 37.   The Chief was required by law to turn over the information known to him to the District Attorney's Office. It was then up to the District Attorney's Office to determine whether the information provided should be further distributed and whether to place Plaintiff on the so called "Brady list."

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Thereafter, in Giglio v. United States, 405 U.S. 150, 154 (1972), the Supreme Court held that the Brady obligation encompasses material that may be used to impeach key government witnesses: "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of Brady." Following the *Brady/Giglio* cases, the Court held that prosecutors are obligated to disclose such information whether or not the defense specifically requests it, and that "the

individual prosecutor ha[s] a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." See, United States v. Bagley, 473 U.S. 667 (1985); see also, Kyles v. Whitley, 514 U.S. 419, 437-438 (1995). Massachusetts state law has imposed an even greater burden on prosecutors to disclose the information as part of mandatory discovery in criminal cases, determining that once information has been determined to be exculpatory, it should be disclosed. Mass. R. Crim. P. 14(a)(1)(A)(iii); see, Matter of A Grand Jury Investigation, 485 Mass. 641, 650-653 (2020).

As is clear from the above, even if the 2013 background report itself was destroyed, the information contained therein was known to the Haverhill Defendants, and by law they were obligated to disclose the potential impeachment material to the District Attorney's Office. It was then up to the District Attorney's Office to review the information provided and decide whether it was exculpatory and whether to place Plaintiff on the so-called "Brady List." The agreement to destroy the 2013 investigation report is a red herring in this instance, because regardless of its destruction, the Haverhill Defendants were required by law to turn over the information so long as Plaintiff was a Police Officer with the City of Haverhill. The Haverhill Defendants, specifically Chief Pistone, abided by the terms of the MOU when the Chief provided Plaintiff with notice of his intent to turn over the information to the District Attorney if Plaintiff remained a Police Officer with the City of Haverhill, as Plaintiff admits in his Complaint. It was then the District Attorneys' Office, after review of the information, that placed Plaintiff on the so-called "Brady List" in December 2022. Complaint, ¶ 56. While Plaintiff argues that his placement on the Brady List was erroneous, the Haverhill Defendants did not create the Brady List and did not place Plaintiff on it. Instead, the Haverhill Defendants met their legal obligation when they disclosed the information to the District Attorney's Office. The City Defendants did not breach

12

the MOU by doing so, but instead notified Plaintiff of their intent to do so, and met their obligation under the law.

In his Complaint, Plaintiff also complains that the Haverhill Defendants, specifically Chief Pistone, breached the MOU by having Captain Pare corroborate information learned from the 2013 background investigation.  Chief Pistone's decision to have the Captain review the information did not breach the MOU and instead was undertaken because of Plaintiff's vociferous denial of the accuracy of the information uncovered when the 2013 background investigation was conducted.[8] Captain Pare did not need to rely on the 2013 background investigation report itself  to corroborate the information contained therein, but instead was able to speak to individuals who had knowledge of the events and was able in some instances to review documents corroborating the events, that included her review of the criminal case file of the Detective who conducted the criminal investigation during which the instant messages were uncovered, which file was maintained separate and apart from the 2013 background investigation report as well as Captain Pare's review of Plaintiff's psychological evaluation conducted for another police department.  Further, Captain Pare was able to corroborate the information contained in the 2013 background investigation report by speaking with individuals at Plaintiff's prior employers who had knowledge of the events that occurred at the time.  What Plaintiff fails to appreciate is that the information about him that was investigated in 2013, was known to others and could not be ignored by the Haverhill Defendants as long as Plaintiff remained employed as a Police Officer with the City of Haverhill, even in a reserve status.  Given their obligation under the law, and their prior notice to Plaintiff of their intent to provide the known

---

[8] Plaintiff continues to assert that the 2013 report is full of lies, both in his complaint and when speaking to the press after his state court complaint was filed, despite Captain's Pare's corroboration of the information contained in the 2013 background investigation report.  See,  https://whav.net/2023/06/12/mayoral-candidate-wood-sues-haverhill-claims-background-check-cost-him-two-police-jobs/

information to the District Attorney's Office, the Haverhill Defendants did not breach the 2013 MOU.

Accordingly, Plaintiff's breach of contract claim against the City Defendants must be dismissed.

    C.    <u>Intentional Interference with Advantageous Business Relations</u>

In Count II of his Complaint, Plaintiff brings a claim against Acting Chief Haugh and Chief Pistone for Intentional Interference with Advantageous Business Relations, alleging that the Acting Chief and Chief interfered with his contractual relationship with the Town of Wenham.  Plaintiff's claim for  intentional interference with advantageous business relations must be dismissed because Plaintiff has not set forth facts in his Complaint that support his assertion that the Acting Chief and Chief acted with improper motive or means, as required to establish this tort.  <u>See</u> <u>Brunner</u> v. <u>Stone & Webster Engineering Corp.</u>, 413 Mass. 698, 705 (1992). A recitation of the elements of the claim in a complaint is not sufficient.  It is not clear in his Complaint what Plaintiff alleges the Acting Chief did to interfere in his advantageous business relations with the Town of Wenham. From the allegations contained in the Complaint against Acting Chief Haugh, Plaintiff appears to be complaining about the Acting Chief's insistence that Plaintiff attend the Full Time Police Academy being offered in July 2021. If that is the basis of Plaintiff's claim, not only did the Acting Chief's actions not interfere in any business relation Plaintiff had with the Town of Wenham, but the Acting Chief's request and insistence that Plaintiff attend the full-time academy being offered in July, complied with the terms of Plaintiff's Waiver and the law after the passage of police reform that required that that all Police Officers, including Reserve Police Officers in Massachusetts attend the Full-Time Academy.

In regards to Chief Pistone, again while Plaintiff does not make clear in his Complaint what Chief Pistone supposedly did to interfere with his advantageous business relations with the Town of Wenham, presumably Plaintiff is complaining about Chief Pistone's turning over potentially exculpatory information about him to the District Attorney's Office.  However, as set forth above, Chief Pistone had the obligation to turn over the information known to him and others in the Haverhill Police Department to the District Attorney's Office if Plaintiff remained employed by the City of Haverhill.  As such Plaintiff cannot establish that either Chief Pistone or Acting Chief Haugh used improper motive or means as required for Plaintiff to prevail on his intentional interference with advantageous business relations against them. "According to Massachusetts common law, 'a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption.'"  Najas Realty, LLC, 821 F.3d at 146, quoting Nelson v. Salem State Coll. 446 Mass. 525 (2006). Here the Acting Chief and Chief acted in good faith, without malice and without corruption when exercising their judgment and discretion as Chiefs of the Haverhill Police Department when making decisions in regards to Plaintiff and information known to him arising from the background investigation conducted in 2013.

Not only is the Complaint devoid of sufficient facts to support a claim for intentional interference with advantageous business relations, but the Acting Chief and Chief are also entitled to common-law immunity from the Plaintiff's intentional tort claim.  Common-law immunity shields a public official from liability for intentional tort claims arising from his official acts, where there is no evidence that the official acted in bad-faith.  See South Boston Betterment Trust Corp. v. Boston Redevelopment Authority, 438 Mass. 57, 69 (2002) ("SBBTC") (applying common-law immunity to claim for interference with contractual relations against mayor); Duarte v. Healy, 405

Mass. 43, 49-50 (1989) (applying common-law immunity to statutory invasion of privacy claim against city officials).  The factual allegations even if true do not support a finding that the Acting Chief or Chief acted in bad faith.

Accordingly, Plaintiff's claim for the intentional interference with advantageous business relations against Acting Chief Haugh and Chief Pistone must be dismissed.

D.    Defamation

In Count III of his Complaint, Plaintiff brings a claim against Acting Chief Haugh and Chief Pistone for defamation alleging that they "made false and harmful statements" about him. Plaintiff fails to identify a specific statement or statements that Acting Chief Haugh or Chief Pistone made about him that he alleges is false that forms the basis of his defamation claim. For that reason alone, Plaintiff's defamation claim must be dismissed. Regardless, Plaintiff will not be able to prevail on his defamation claim against Acting Chief Haugh or Chief Pistone because he cannot establish that either of them made a false statement.  It is axiomatic, that to be defamatory, the published statement must be false. See, Kelleher v. Lowell General Hospital, 98 Mass. App. Ct. 49, 52 (2020).

Even if Plaintiff had identified a specific statement published by Acting Chief Haugh and Chief Pistone that was not true, any such statement would be subject to the conditional privilege afforded public officials such as the Acting Chief and Chief when acting in their official capacity.  See, Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623 (2012).  "The purpose of a conditional privilege is to permit public officials to speak freely on matters of public importance, because '[t]he threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important issues.'"  Landry v. Mier, 921 F.Supp. 880, 888 (D. Mass. 1986) quoting Mulgrew v. Taunton,

16

410 Mass. 631, 635 (1991); <u>Vigoda</u> v. <u>Barton</u>, 348 Mass. 478, 483-85 (1965).  As the Court

noted in <u>Vigoda</u>, "government officials 'are entitled to be free and beyond that the public interest

requires that they be free, to engage in action which may have its genesis in honest error.'".

<u>Vigoda</u>, 348 Mass. at 485. Here, the Acting Chief and Chief were acting in their capacities as

heads of the Police Department in their dealings with Plaintiff and when speaking about the

information known to them about Plaintiff, either to Plaintiff himself, to the District Attorney's

Office or other necessary City employees.  Finally, based on the allegations contained in the

Complaint, Plaintiff will not be able to prevail on his defamation claim because the Acting Chief

and Chief did not unnecessarily, unreasonably, or excessively publish an alleged defamatory

matter, or publish the alleged defamatory statement with "actual malice" as required for Plaintiff

to prevail on his defamation claim.   <u>Landry</u>, 921 F.Supp at 888, citing <u>Catrone</u> v. <u>Thoroughbred</u>

<u>Racing Associations</u>, 929 F.2d 881, 889 (1st Cir. 1991). SOF, ¶¶49 and 52. Instead, it was

Plaintiff who unnecessarily published information about himself and disseminated it

unnecessarily when he filed his lawsuit and spoke to the press. See,

https://whav.net/2023/06/12/mayoral-candidate-wood-sues-haverhill-claims-background-check-

cost-him-two-police-jobs.

      Accordingly, Plaintiff defamation claim against Acting Chief Haugh and Chief Pistone

must be dismissed.

      E.    <u>Wrongful Termination in Violation of Public Policy</u>

      In Count IV of his Complaint, Plaintiff brings a claim for wrongful termination in

violation of public policy against all of the Haverhill Defendants. Plaintiff's wrongful

termination claim must be dismissed. Putting aside whether or not Plaintiff was actually

terminated from his employment as a Reserve Police Officer with the City of Haverhill, Plaintiff

cannot bring his claim for  wrongful termination against public policy because he failed to

exhaust the grievance procedures available to him in the CBA that was applicable to his

employer.   See, Brienzo v. Town of Achushnet, 2002 Mass. Super. LEXIS 266* 18, 21-23; 15

Mass. L. Rep. 142; citing O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 695 (1996);

Johnston v. School Committee of Watertown, 404 Mass. 23, 25 (1989); Azzi v. Western Elec.

Co., 19 Mass. App. Ct. 406, 408 (1985). Likewise, Plaintiff cannot bring a claim for wrongful

termination against public policy based on the doctrine of "primary jurisdiction" because

Plaintiff did not file a complaint with the Civil Service Commission  as required within ten days

after his alleged termination from employment pursuant to G.L. c. 31, §§ 41 and 42.  Plaintiff

cannot circumvent the administrative process and thus, his claim for wrongful termination is

barred because he failed to exhaust the administrative remedies available to him. Brienzo v.

Town of Achushnet, 2002 Mass. Super. LEXIS 266 * 23-26, citing Lincoln v. Personnel

Administrator of the Dept. of Personnel Administration, 432 Mass. 208, 212 (2000).

In any event, Plaintiff's claim for wrongful termination against public policy also fails

because the Haverhill Defendants' actions in requiring that he attend either a Bridge Academy or

a Full Time Police Academy, and when providing potentially exculpatory information about

Plaintiff to the District Attorney's Office for review, is not against public policy, but instead

complies with the law and public policy.

Accordingly, Plaintiff's claim for wrongful termination against public policy must be

dismissed.

F.     Violation of G.L. c. 31 sec. 1 et seq.

In Count V of his Complaint, Plaintiff alleges that the Haverhill Defendants violated the

Civil Service laws, G.L. c. 31, by not providing him due process, including hearings before they

suspended his employment, terminated his employment or otherwise materially altered his

employment. As set forth above, Plaintiff's claim for the violation of G.L. c. 31, must be

dismissed based on the doctrine of "primary jurisdiction" because Plaintiff did not file a

complaint with the Civil Service Commission  as required within ten days after his alleged

termination from employment pursuant to G.L. c. 31, §§ 41 and 42.  Plaintiff cannot circumvent

the administrative process and thus, his claim for the violation of G.L. c. 31 must be dismissed.

See, Brienzo v. Town of Achushnet, 2002 Mass. Super. LEXIS 266 * 23-26, citing Lincoln v.

Personnel Administrator of the Dept. of Personnel Administration, 432 Mass. 208, 212 (2000).  P

Accordingly, Plaintiff's claim for the violation of G.L. c. 31, against the City Defendants

must be dismissed.

G.    Violation of 42 U.S.C. § 1983 Civil Rights Violation

In Count VI of the Complaint, Plaintiff makes a generic claim alleging that the Haverhill

Defendants violated his civil rights "concerning the implementation of background checks and

the continued use of the 2013 background report in employment decisions."  Complaint, ¶ 117.

Plaintiff alleges, without specifics, that such "conduct" violated his rights secured by the

Constitution of the Law of the United States, including but not limited to, "the first, fourth and

fourteenth amendments and constitutional laws of the Commonwealth."  Complaint, ¶ 118.

Plaintiff does not specify what specific conduct forms the basis of his claims or how the

Haverhill Defendants "implementation of background checks and continued use of the 2013

background report in employment decisions," violated his first, fourth and fourteenth amendment

rights.  Defendants should not be required to guess.  The Haverhill Defendants did not violate

Plaintiff's rights under the First Amendment of the Constitution by purportedly using

information they were aware of when making decisions about Plaintiff's employment and

19

Plaintiff does not explain why the use of such information violated his First Amendment rights. Similarly, Plaintiff does not elucidate how he believes the Haverhill Defendants use of the background information amounted to an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and the claim itself is nonsensical. Finally, Plaintiff does not reveal why he believes the Haverhill Defendants' use of the information known from the background investigation violated his rights under the Fourteenth Amendment of the United States Constitution, but to the extent that he is alleging that the Haverhill Defendants' use of the background information violated his due process rights, Plaintiff's Complaint must be dismissed because it was Plaintiff who failed to avail himself of the process afforded him under the CBA and Civil Service laws.

Even if the allegations contained in the Complaint properly pled a claim for the violation of 42 U.S.C. § 1983, the claim must be dismissed because the Haverhill Defendants are entitled to qualified immunity.  Qualified immunity from claims pled pursuant to Section 1983 exists where a government official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity analysis has two facets: (1) whether the municipal official violated the plaintiff's constitutional rights; and, if so, (2) whether the allegedly abridged right was "clearly established" at the time of the official's alleged misconduct. Gray v. Cummings, 917 F.3d 1, 9–10 (1st Cir. 2019). This second inquiry also has two facets. Id. First, the plaintiff must identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm. Gray, 917 F.3d at 10, citing Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017). Second, the plaintiff must demonstrate that "an objectively

reasonable official in the defendant's position would have known that his conduct violated that rule of law." Id. This latter step is designed to achieve a prophylactic purpose as it affords breathing room for a public official even if he or she made a mistake about the lawfulness of their conduct. Conlogue v. Hamilton, 906 F.3d 150, 154-155 (1ˢᵗ Cir. 2018).[9] Existing precedent must have placed the constitutional question "beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Here, Plaintiff cannot adduce evidence to establish the violation of a constitutional right, nor can he meet his burden to show that any such alleged constitutional rights were "clearly established." To satisfy his legal obligation of defeating qualified immunity, Plaintiff must identify either a case of controlling authority or a consensus of cases of persuasive authority establishing the constitutional right in the particular context of Plaintiff's case. Gray, 917 F.3d at 10; Escalera-Salgado v. United States, 911 F.3d 38, 41 (1ˢᵗ Cir. 2018) (when a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable). A single District Court decision recognizing a constitutional right cannot "clearly establish" that right for purposes of qualified immunity. Katz v. McVeigh, 931 F. Supp. 2d 311, 348 (D.N.H. 2013), aff'd (Sept. 23, 2014) (decision must be "binding"); Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (absent controlling authority, a robust consensus of cases of persuasive authority is necessary to overcome qualified immunity – even a district judge's holding is not "controlling authority" in any jurisdiction). An on point Supreme Court or Circuit Court of Appeals decision is necessary to clearly establish the constitutional right in the relevant context

---

[9] Whether a constitutional right is "clearly established" is a matter of law for the court to decide. Stone v. Evangelidis, No. CV 18-10011-RGS, 2020 WL 7405739, at *7 (D. Mass. Dec. 17, 2020), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991). The "contours of the right" must be "sufficiently clear," such that, "under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." Ford v. Bender, 768 F.3d 15, 23 (1ˢᵗ Cir. 2014).

to defeat qualified immunity. See Reynolds v. City of Anchorage, 379 F.3d 358, 367 (6th Cir. 2004); Courson v. McMillian, 939 F.2d 1479, 1497–98 (11th Cir. 1991); A.N. by & through Ponder v. Syling, 928 F.3d 1191, 1197 (10th Cir. 2019) (Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right). Here, Plaintiff cannot show that he had a clearly established constitutional right to have the Haverhill Defendants withhold potentially exculpatory information known to them from the District Attorney's Office. In fact, the established case law shows just the opposite, entitling the Haverhill Defendants to qualified immunity.

Accordingly, Plaintiff's claim for the violation of 42 U.S.C. § 1983 must be dismissed.

H.     Violation of 42 U.S.C. § 1985

In Count VII of his Complaint, Plaintiff brings a claim for the violation of 42 U.S.C. § 1985 alleging that all of the Defendants "conspired to deprive [him]" of his rights secured by the "constitution and law of the United States, including but not limited to the first, fourth, and fourteenth amendments and the constitution and laws of the Commonwealth."  This is simply a regurgitation of his claim for the violation of 42 U.S.C. § 1983 in Count VI of his Complaint. As with that claim, Plaintiff fails to specify the factual allegations supporting his various Constitutional claims, and any factual basis to support his conspiracy claim.  Indeed, there is nothing in the complaint besides a bald conjecture that the Haverhill Defendants interacted in any way with the Town of Wenham or Wenham officials or personnel with respect to Plaintiff's employment.

While Plaintiff is clearly unhappy that the Haverhill Defendants aware of the information learned during the 2013 background investigation, disclosed that information to the District Attorney's Office, the fact of the matter is that such disclosure was proper and pursuant to the

law.  Plaintiff's remedy, to the extent that he believes the information provided is not true,  is not to challenge the Haverhill Defendants' disclosure of the information to the District Attorney's Office, but to provide information to the District Attorney's Office to show that the information provided is false. Either Plaintiff did not do so knowing the information provided is true, or he did, but the District Attorney's Office did not agree with him. Regardless, the allegations contained in the Complaint fail to state a claim that the Haverhill Defendants conspired with the Town of Wenham to violate Plaintiff's constitutional rights.

To establish a conspiracy claim, Plaintiff must not only allege a conspiracy, but also must allege a conspiratorial purpose to deprive him of his equal protection of the laws and must identify an overt act in furtherance of the conspiracy. Finally, Plaintiff must show either injury to person or property, or a deprivation of a constitutionally protected right.  See Perez v. Sanchez v. Pub. Bldg. Auth., 531 F.3d 104. 107 (1st Cir. 2008). With respect to the equal protection "element,"  to sustain a claim under these laws, Plaintiff must show "class-based" discrimination – in other words, Plaintiff  must prove facts showing that the Haverhill Defendants conspired with the Town of Wenham him because of his membership in a class, and that the criteria defining the class was invidious.  See Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982).  Here, not only has Plaintiff  failed to allege a conspiratorial purpose to deprive him of his equal protections of the laws or an overt act between the Haverhill Defendants and the Town of Wenham in furtherance of that conspiracy, he has not alleged - nor could he - that the City Defendants and the Town of Wenham conspired against him because of his membership in a class.

Accordingly, Plaintiff's claim for the violation of 42 U.S.C. § 1985 must be dismissed.

I.        Violation of G.L. c. 214, § 1B

In Count VIII of his Complaint, Plaintiff alleges that the Haverhill Defendants violated his right to privacy by disclosing the contents of the background investigation in violation of G.L. c. 214, § 1B.  Plaintiff's invasion of privacy claim must be dismissed because the Haverhill Defendants' disclosure of the information to the District Attorney's Office as set forth above was not unreasonable, was required because of Plaintiff's continued employment as a Reserve Police Officer with the City of Haverhill and served a legitimate need. G.L. c. 214, § 1B protects an individual's privacy from "unreasonable, substantial or serious" interference.  Here the Haverhill Defendants did not act unreasonably when providing the complained of information to the District Attorney's Office.  Moreover, the interest of the City of Haverhill in complying with the law and providing potentially exculpatory information to the District Attorney's Office outweighs any interest Plaintiff may have had in keeping the information contained in a pre-employment background investigation to which he consented private.  See, Bratt v. International Business Machs. Corp., 392 Mass. 508 (1984).

The nature of the employer's business and the nature of the employees duties are relevant factors in determining the gravity of the employer's interest.  Folmsbee v. Tech Tool Grinding & Supply, Inc., 417 Mass. 388 (1994).  Here, the nature of the employer's "business" as a law enforcement agency, and Plaintiff's duties as a Reserve Police Officer are highly relevant in determining the gravity of the Haverhill Defendants' interest in disclosing to the District Attorney's Office the very information that Plaintiff seeks to keep private.  Again, while Plaintiff has not identified the specific information in the 2013 background investigation that forms the basis of his invasion of privacy claim, it simply cannot be disputed that the Haverhill Defendants

had a paramount interest – indeed, a legal requirement – to provide that information to the District Attorney's Office for review and that their disclosure of the information was per se reasonable . Accordingly, Plaintiff's claim for the invasion of privacy brought pursuant to G.L. c. 214, § 1B must be dismissed.

      J.   <u>Violations of Title I the Electronic Communications, Privacy Act, 18 U.S.C. §§ 2510 et seq.</u>

Finally, in Count IX of his Complaint, Plaintiff brings a claim for the violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 alleging that the Haverhill Defendants disclosed  electronic communications in their release of information identified in the 2013 background investigation, in violation of the Act.  Plaintiff did not allege, nor could he, that the Haverhill Defendants improperly intercepted his electronic messages –instant messages between he and his friend back in 2010 -  because those messages were intercepted as part of a criminal investigation and maintained as part of a law enforcement investigation file. Presumably, what Plaintiff is alleging in his Complaint is that the Haverhill Defendants violated the Act, when they disclosed the intercepted messages to the District Attorney's Office.  If that is the allegation Plaintiff's claim must fail because to have a claim for the violation of the Act, Plaintiff must first show that the communications were improperly intercepted, and then that Haverhill Defendants disclosure of those communication was not appropriate to the proper performance of their official duties.  Not only does Plaintiff fail to allege that the communications were improperly intercepted back in 2010, but as set forth repeatedly above, the Haverhill Defendants' disclosure of the communications to the District Attorney's Office was done in the proper performance of their official duties and did not violate the Act. Similarly, Captain Pare's review of the communications and inclusion of them in her report corroborating the information learned during the 2013 background investigation, was done in the proper

performance of her official duty and did not violate the Act.  See, Berry v. Funk, 146 F.3d 1003, 1012 (1998); see also, U.S. v. Conley, 531 F.3d 56, 59-60 (1st Cir. 2008) (the authority to disclose communications between law enforcement officers stems from 18 U.S.C. § 2517. Section 2517 allows law enforcement officers to share communications "to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure."); U.S. v. Lewis, 406 F.3d 11, 19-20 (1st Cir. 2005) (recordings authorized by § 2510(5)(a)(ii) are 'not the product of an interception, consensual or otherwise, governed by Title III, therefore, they are not subject to whatever limitations Title III places upon the disclosure of information that does result from a covered interception).  Because Plaintiff does not and cannot allege that the messages he complains of were improperly intercepted, their dissemination amongst law enforcement in the proper performance of the Haverhill Defendants' official duties does not violate Title I of the Electronic Telecommunications Act.

Accordingly, Plaintiff's claim brought pursuant to Title I of  the Electronic Communications, Privacy Act, 18 U.S.C. §§ 2510 et seq. must be dismissed.

## III.   CONCLUSION

For all of the reasons set forth above, Defendants City of Haverhill, City of Haverhill Police Department, Anthony Haugh and Robert Pistone, respectfully request that this honorable Court grant City Defendants' Motion to Dismiss dismissing Plaintiff's claims and enter judgment in favor of the City Defendants.

Respectfully Submitted,

DEFENDANTS
CITY OF HAVERHILL, ANTHONY HAUGH
AND ROBERT PISTONE,
By their attorneys,

_____
Deborah I. Ecker (BBO# 554623)
KP Law, PC
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
decker@k-plaw.com

Dated:  December 29, 2023

894367v3/60700/1197

## CERTIFICATE OF SERVICE

I, Deborah I. Ecker, hereby certify that on the below date, I served a copy of the

foregoing *Memorandum of Law in Support of Defendants City of Haverhill, City of Haverhill*

*Police Department, Anthony Haugh, And Robert Pistone's Motion to Dismiss Plaintiff's*

*Complaint,* by electronic mail and first-class mail, postage prepaid, to the following counsel of

record:

Dated:  December  29, 2023

_____
Deborah I. Ecker, Esq.