## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCOTT WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HAVERHILL, HAVERHILL | ) | |
| POLICE DEPARTMENT, TOWN OF | ) | No. 1:23-cv-12377-JEK |
| WENHAM, WENHAM POLICE | ) | |
| DEPARTMENT, KEVIN DINAPOLI, | ) | |
| ANTHONY HAUGH, and ROBERT | ) | |
| PISTONE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

KOBICK, J.

This action concerns the termination of plaintiff Scott Wood, a former police officer, from the City of Haverhill and Town of Wenham Police Departments. Wood principally alleges that the defendants—Haverhill and Wenham, their police departments, and police chiefs Kevin DiNapoli, Anthony Haugh, and Robert Pistone—improperly terminated his employment based on a faulty background investigation and report from 2013. The Haverhill and Wenham defendants have separately moved to dismiss all of the claims against them. For the reasons that follow, the Court concludes that Wood has plausibly alleged claims for breach of contract against Haverhill; defamation and intentional interference with advantageous business and contractual relations against Acting Chief Haugh and Chief Pistone; and invasion of privacy against Haverhill, its police department, and each of the individual defendants. The remaining claims will be dismissed.

**BACKGROUND**

The following facts, drawn from the complaint and documents incorporated by reference into the complaint, are presumed true for purposes of the defendants' motions to dismiss. *See Parmenter v. Prudential Ins. Co. of Am.*, 93 F.4th 13, 18 (1st Cir. 2024).[1]

In April 2012, Wood applied to become an officer with the Haverhill Police Department. ECF 1, ¶ 15. As part of the hiring process, former Deputy Chief Donald Thompson conducted a background investigation into Wood and prepared a corresponding report. *Id.* ¶¶ 16, 19-20. The report stated that Wood had "used inappropriate words" in a 2008 instant message conversation with a former classmate and had engaged in "misconduct as an employee of Merrimack College and Regis College as well as in a class he had taken part in from the" Municipal Police Training Committee. *Id.* ¶ 17. Deputy Chief Thompson obtained the instant messages through an unrelated investigation into a former classmate of Wood's, but Wood was not questioned about the instant messages in 2012 and was not suspected of any criminal conduct. *Id.* ¶ 18. Wood denies the allegations in Thompson's background report and claims that they lack evidentiary support. *Id.* ¶ 17.

On May 31, 2013, the City of Haverhill and Wood entered into a memorandum of understanding ("MOU"). *Id.* ¶ 19; ECF 11-1.[2] Under its terms, Wood agreed to withdraw his

---

[1] The Court will treat the allegations against the Wenham Police Department and the Haverhill Police Department as directed toward the Town of Wenham and City of Haverhill, respectively, because neither police department is subject to suit as an admitted "municipal department within" the Town or City. ECF 1, ¶¶ 7, 11; *see Dwan v. City of Boston*, 329 F.3d 275, 278 n.1 (1st Cir. 2003) ("The City of Boston was substituted for the [Boston Police] Department because the Department is not a suable entity."); *St. George Greek Orthodox Cathedral of Western Mass. v. Fire Dept. of Springfield*, 462 Mass. 120, 120 n.1 (2012) (treating the City of Springfield and the Springfield Fire Department as "a single defendant").

[2] This agreement, which was attached to the Haverhill defendants' motion to dismiss, is a "'documen[t] incorporated by reference into the complaint.'" *Parmenter*, 93 F.4th at 18 (quoting *N.R. by & through S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022)). At the March 28, 2024

application for employment with the Haverhill Police Department. ECF 1, ¶ 19; ECF 11-1. In exchange, Haverhill agreed that it would: (1) dispose of all copies of the background report within one year; (2) not publish the background report to any third party or provide information about it or the background investigation to any non-essential employees during this one-year retention period; (3) not discuss any aspect of the background report or investigation "unless necessary for a specific business purpose or unless compelled to do so by a court of law"; (4) afford Wood two-weeks' notice if the City planned to produce the background report for any reason; and (5) maintain the confidentiality of the MOU and the circumstances leading to its creation "to the degree allowed for by law." ECF 11-1; *see* ECF 1, ¶¶ 19-21.

That same month, in May 2013, the Wenham Police Department hired Wood as a reserve police officer. ECF 1, ¶ 22. Nearly six years later, in March 2019, Wood was hired by the Methuen Police Department and applied again to be an officer for the Haverhill Police Department. *Id.* ¶¶ 23-24. In October 2020, after a background investigation conducted by Alan DeNaro, then the Chief of the Haverhill Police Department, Haverhill appointed Wood as a reserve police officer, and he resigned his position in Methuen. *Id.* ¶¶ 26-28. Chief DeNaro offered Wood a full-time position in March 2021, after the parties agreed that Wood would attend an upcoming Bridge Academy training program to be certified as a full-time officer. *Id.* ¶ 29. In the meantime, on March 19, 2021, the Municipal Police Training Committee approved a waiver, requested by Chief DeNaro and Haverhill Mayor James Fiorentini, that allowed Wood to work as a full-time officer for the Haverhill Police Department until December 12, 2021, to allow time to complete the

---

hearing, the parties confirmed that this exhibit accurately reflects the agreement, even though it excludes the signature page.

training program. *Id.* ¶ 30; ECF 11-2. Wood was sworn in as a full-time officer on April 22, 2021.
ECF 1, ¶ 31.

Wood was set to begin a full-time schedule, with four days on and two days off, on May
30, 2021. *Id.* ¶ 32. Instead, on May 28, 2021, while Chief DeNaro was on medical leave, Wood
received a call from Acting Chief Anthony Haugh, a defendant in this action, who informed Wood
that he would be taken off the schedule. *Id.* ¶¶ 33-34. On June 4, 2021, Acting Chief Haugh told
Wood that he would not be employed full-time or permitted to attend the Bridge Academy, but
would instead remain a reserve officer and was required to attend a full-time police academy. *Id.*
¶¶ 36-38. Two weeks later, on June 18, 2021, the Deputy Chief of the Haverhill Police Department,
Stephen Doherty, told Wood, without further explanation, that he needed to return his badge, gun,
and other police equipment. *Id.* ¶ 43. The next day, Mayor Fiorentini called Wood and said, at the
outset, that "he should not be calling because 'their conversation could end in a lawsuit.'" *Id.* ¶ 44.
The Mayor then informed Wood that "Acting Chief Haugh had come to his office with a copy of
the background report that [Haverhill] agreed to destroy and threatened to go to the press," and
that the report was the reason why Wood had to return his badge and gun. *Id.* ¶¶ 44-45.

Some six months later, in December 2021, Wood met with the new Chief of the Haverhill
Police Department and a defendant here, Robert Pistone. *Id.* ¶ 46. Chief Pistone stated that he
thought Wood had resigned and mentioned that someone had informed the District Attorney's
Office that a copy of Wood's 2013 background report existed. *Id.* ¶¶ 46, 48. In response, Wood
showed Chief Pistone the signed MOU between him and Haverhill, which stated that the
background report was confidential and should have been destroyed in 2014. *Id.* ¶ 48. After saying
that he would speak with Haverhill's counsel, Chief Pistone told Wood that he would not have to
turn over the report if Wood were to resign. *Id.* ¶¶ 48-49. Later that month, Wood's attorney

notified the City's outside counsel that Haverhill was violating its 2013 MOU with Wood and interfering with his ability to work as a police officer. *Id.* ¶ 51. Haverhill subsequently terminated Wood's employment. *Id.* ¶ 52. Wood had not worked a single shift for the Haverhill Police Department after returning his badge and gun in June 2021. *Id.* ¶¶ 43, 47, 52.

Wood later learned that a Captain with the Haverhill Police Department, Megan Pare, was ordered in December 2021 to investigate Wood's "'background discrepancy' from 2013." *Id.* ¶ 54. Her report, completed in February 2022, revealed that she received Wood's 2013 background report from a retired detective named John Moses. *Id.* ¶ 56. Her report also discussed several of Wood's prior psychological evaluations, detailed the contents of the 2013 background report, and attached Wood's 2008 instant messages as an exhibit. *Id.* ¶¶ 56-58. Counsel for Wood requested Wood's personnel file in September 2022 and discovered that it contained Captain Pare's report, including the 2013 material. *Id.* ¶¶ 61-62. Haverhill's counsel later acknowledged that Wood was terminated from the Haverhill Police Department because of Captain Pare's report. *Id.* ¶ 59.

In December 2022, Wood met with the Chief of the Wenham Police Department and a defendant here, Kevin DiNapoli, who told Wood that he would be placed on administrative leave from his position as a reserve officer in Wenham and requested that Wood return his badge and gun. *Id.* ¶¶ 63-64. Chief DiNapoli explained that Wood had not violated any departmental policy, but that another law enforcement agency had contacted the District Attorney's Office with information from Wood's 2013 background report. *Id.* ¶¶ 64-65. Soon after Wood retained counsel, Wenham informed Wood's attorney that his employment would be terminated, and that he could appeal the decision to the Town Selectboard. *Id.* ¶¶ 68, 70. In January 2023, Wood received a notice stating that he was formally being placed under an Internal Affairs investigation by the Wenham Police Department. *Id.* ¶¶ 69, 71.

In June 2023, the Wenham Police Department decided not to renew Wood's contract because of the claims from Haverhill and the Internal Affairs investigation. *Id.* ¶ 72. Wenham did not afford Wood the opportunity to appeal his termination to the Town Selectboard. *Id.* ¶ 73. Wenham also publicly disclosed purportedly untrue details of the 2013 background report to the *Boston Globe*. *Id.* ¶¶ 77-78. Wood later learned that he had been placed on the "Brady List"[3] in December 2022 because of Haverhill or Wenham's disclosure of his 2013 background report to the District Attorney's Office. *Id.* ¶ 74.

Wood filed this action against the City of Haverhill, its police department, Acting Chief Haugh, and Chief Pistone (together, the "Haverhill defendants"), as well as the Town of Wenham, its police department, and Chief DiNapoli (together, the "Wenham defendants") in October 2023. ECF 1. The complaint asserts claims for breach of contract against the Haverhill defendants (Count I); intentional interference with advantageous business and contractual relations against Acting Chief Haugh and Chief Pistone (Count II); defamation against Acting Chief Haugh, Chief Pistone, and the Town of Wenham Police Department (Count III); wrongful termination in violation of public policy against all defendants (Count IV); a violation of the Massachusetts Civil Service Law, M.G.L. c. 31, § 1 *et seq.* against all defendants (Count V); First, Fourth, and Fourteenth Amendment violations under 42 U.S.C. § 1983 against all defendants (Count VI); a violation of 42 U.S.C. § 1985 against all defendants (Count VII); a violation of M.G.L. c. 214, § 1B against all defendants (Count VIII); and a violation of Title I of the Electronic Communications Privacy Act,

---

[3] The Brady List refers colloquially "to a prosecutor's list of police officers or government witnesses whose credibility have come into question" in light of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). ECF 22, at 8 n.4. "*Brady* and its progeny established that a defendant has a due process right to request and receive evidence that the government possesses which is material to his guilt or punishment." *United States v. Femia*, 9 F.3d 990, 993 (1st Cir. 1993). "The duty to disclose extends to impeachment evidence." *Jackson v. Marshall*, 864 F.3d 1, 8 (1st Cir. 2017) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

18 U.S.C. § 2510 *et seq.* against the City of Haverhill and its police department (Count IX). *Id.* ¶¶ 82-139. The Haverhill defendants and Wenham defendants moved separately to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). ECF 10, 21.

STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted,'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

DISCUSSION

## I.   **Breach of Contract.**

Wood's first claim, for breach of contract, contends that the Haverhill defendants breached the 2013 MOU by failing to destroy the 2013 background report and then later distributing it, without providing Wood two weeks' notice, to officers in the Haverhill and Wenham Police Departments and to the District Attorney's Office. ECF 1, ¶¶ 82-91. To state a breach of contract claim, Wood must allege that (1) an agreement existed among the parties; (2) the agreement was

supported by consideration; (3) he was ready, willing, and able to perform his part of the agreement; (4) the defendants breached the agreement; and (5) he suffered harm as a result of their breach. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). With respect to the claim against Haverhill, Wood has plausibly alleged each of these elements. The complaint alleges that, in the MOU, Haverhill entered into a binding agreement with Wood, supported by valid consideration, "to destroy . . . or not distribute [Wood's] 2013 report"; that it "failed to destroy the report as agreed"; its police officers "distributed the contents of the report"; and that it "failed to provide notice to" Wood, as it was "contractually obligated to do," before disclosing the report. ECF 1, ¶¶ 83-87; *see* ECF 11-1. The complaint further alleges that Wood was harmed by these violations because they led to his termination from the Haverhill and Wenham Police Departments. ECF 1, ¶¶ 59, 72, 90-91.[4]

Instead of challenging the sufficiency of Wood's allegations, Haverhill contends that Wood cannot prevail on his claim because "even if the 2013 background report itself was destroyed, the information contained therein was known to" its police department, including Acting Chief Haugh and Chief Pistone, "and by law they were obligated to disclose the potential impeachment material to the District Attorney's Office" under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. ECF 11, at 12. This argument assumes a key fact

---

[4] The complaint separately alleges that the Haverhill defendants violated Wood's collective bargaining agreement. *Id.* ¶¶ 88-89. But the complaint contains no allegations concerning the terms of that collective bargaining agreement or how the Haverhill defendants allegedly breached that agreement, and it does not attach the collective bargaining agreement as an exhibit. In opposing the Haverhill defendants' motion to dismiss, Wood relies on the MOU as the sole basis for his breach of contract claim. *See* ECF 19, at 8-11. Under the circumstances, any breach of contract claim premised on an alleged breach of the collective bargaining agreement is insufficiently pled and will be dismissed. *See Britton v. AthenaHealth, Inc.*, No. 13-P-1544, 2015 WL 4726872, at *3 (Mass. App. Ct. Aug. 11, 2015) (Rule 1:28) (plaintiffs failed to state claim for breach of contract, in part, because they did not allege facts demonstrating "any contract right was breached").

*not* alleged in the complaint: that in 2021, Acting Chief Haugh and Chief Pistone knew about the information contained in the 2013 background report through some source other than the report itself, which, under the MOU, should have been destroyed in 2014. Contrary to Haverhill's factual assumption, the complaint alleges that Acting Chief Haugh "found a copy of the background report" and then took steps to terminate Wood because of that report. ECF 1, ¶¶ 44-45. The complaint also alleges that Wood was subject to background investigations by Wenham in 2013, Methuen in 2019, and Haverhill in 2020, and that none of these investigations uncovered the information contained in the 2013 background report or information that would prevent Wood from serving. *Id.* ¶¶ 22-23, 26. Construing the well pleaded facts in the light most favorable to Wood, the Court cannot infer from the complaint that Acting Chief Haugh and Chief Pistone would have known about the contents of the 2013 background report without having been provided a copy. Thus, Wood has, at this early stage in the litigation, asserted a plausible breach of contract claim against Haverhill.

Wood has not, however, adequately alleged a breach of contract claim against Acting Chief Haugh, Chief Pistone, or the Haverhill Police Department because none of these defendants is a party to the MOU. While the signature page of the MOU is missing, the agreement identifies only Haverhill and Wood as "the parties." ECF 11-1. Where, as here, a defendant is not a "party to the contract . . . [,] the plaintiff can have no action against him for breach of that contract." *Perry v. Hayes*, 215 Mass. 296, 297 (1913); *see also, e.g.*, *Lepp v. M.S. Realty Tr.*, 2008 Mass. App. Div. 44 (Dist. Ct. 2008), *aff'd*, 74 Mass. App. Ct. 1125 (2009) ("As DeSangro did not sign and was not a party to the agreement at issue in this case, he could not be held liable for breach of that agreement."). Wood's breach of contract claim against Acting Chief Haugh, Chief Pistone, and the Haverhill Police Department will, accordingly, be dismissed.

## II.     **Intentional Interference with Advantageous Business and Contractual Relations.**

The complaint next alleges that Acting Chief Haugh and Chief Pistone, intentionally and with malice, interfered with Wood's advantageous business and contractual relationship with Wenham and its police department. ECF 1, ¶¶ 92-96. Where, as here, the complaint does not specify whether these defendants are sued in their official or individual capacities, the Court applies a "'course of proceedings' test." *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004). Under that test, "courts are not limited by the presence or absence of language identifying capacity to suit on the face of the complaint alone," and instead "may examine 'the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability.'" *Id.* (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). Relevant factors "include 'the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity.'" *Id.* (quoting *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001)). The underlying inquiry is "'whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.'" *Id.* at 22-23 (quoting *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)).

The course of proceedings here gave Acting Chief Haugh and Chief Pistone fair notice that they were being sued in their individual capacities with respect to the claim. Under the Massachusetts Tort Claims Act ("MTCA"), defendants sued in their official capacities retain immunity from intentional tort claims, including claims for "interference with advantageous relations or interference with contractual relations." M.G.L. c. 258, § 10(c); *see Nelson v. Salem State Coll.*, 446 Mass. 525, 537 (2006); *Saxonis v. City of Lynn*, 62 Mass. App. Ct. 916, 918 (2004) (the defendant school principal was "immune from liability under G.L. c. 258, § 10(c)" for tortious interference claim asserted against him "[i]n his official capacity"). Had Acting Chief Haugh and

Chief Pistone believed that they had been sued in their official capacities, they likely would have raised section 10(c) as a defense. Instead, as discussed below, they have asserted common-law immunity as a defense to liability. *See* ECF 11, at 14-16; *S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.*, 438 Mass. 57, 69 (2002) (finding that the MTCA did not apply, and instead applying common-law immunity, because the defendant was "sued individually for an intentional tort").[5] The Court therefore construes the complaint as asserting a tortious interference claim against Acting Chief Haugh and Chief Pistone in their individual capacities.

To state an intentional interference claim, Wood must plausibly allege "that '(1) he had a contract with a third party; (2) the defendant[s] knowingly induced the third party to break that contract; (3) the defendant[s'] interference, in addition to being intentional, was improper in motive or means; and (4) [he] was harmed by the defendant[s'] actions.'" *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715-16 (2011) (quoting *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991)). In this employment context, where Wood has sued his supervisors for their alleged interference with his contractual relationship with Wenham, Wood must also allege that Acting Chief Haugh and Chief Pistone "acted with actual malice." *Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 54 (2020) (quotation marks omitted). Because "the talismanic invocation in the complaint" of certain conclusory phrases, "standing alone and unsupported, [does not] prove or even imply malice," *Anzalone v. Administrative Office of the Trial Court*, 457 Mass. 647, 660-61 (2010), Wood must instead "allege specific facts from which a plausible inference of malice can be drawn," *Kelleher*, 98 Mass. App. Ct. at 56.

---

[5] In addition, counsel for the Haverhill defendants represented at the motion hearing that she understood Wood to be asserting individual capacity claims against the individual defendants.

Acting Chief Haugh and Chief Pistone contend that Wood fails to satisfy his heavy burden of pleading actual malice. The Court disagrees. The complaint alleges that Acting Chief Haugh and Chief Pistone "intentionally interfered" with Wood's employment at the Wenham Police Department and acted "with malice and through improper motives" or "improper means" "to get him terminated." ECF 1, ¶ 95. Beyond these conclusory phrases, Wood alleges that the two defendants "were aware of their obligations under the [MOU] and blatantly disregarded said obligations" by disclosing to Wenham the contents of the 2013 background report. *Id.* ¶¶ 51, 75-76. And it further alleges that the defendants "had reason to believe this information was false" because former Chief DeNaro, their immediate predecessor, "had at the time and reaffirmed since that the 2013 background report was inaccurate." *Id.* ¶ 100.[6] Whether Acting Chief Haugh and Chief Pistone actually acted with malice, as alleged in the complaint, "should be evaluated on the basis of a factual record"—not resolved prematurely on a motion to dismiss—because it "requires an assessment of state of mind." *Fraelick v. PerkettPR, Inc.*, 83 Mass. App. Ct. 698, 708 (2013); *see Putluri v. FSSI Acquisition, Inc.*, 637 F. Supp. 3d 1, 5-6 (D. Mass. 2022) (denying motion to dismiss where the defendant's alleged breaches of contract "support a reasonable inference that defendant acted with actual malice").

Acting Chief Haugh and Chief Pistone additionally contend that even if Wood has stated a claim of intentional interference with advantageous business and contractual relations, they are entitled to common-law immunity on the claim. Under "Massachusetts common law, 'a public official, exercising judgment and discretion, is not liable for negligence or other error in the making

---

[6] Even though this allegation is nested under the defamation claim, it is accepted as true at the pleading stage because it is a factual allegation, not a legal conclusion. *See Iqbal*, 556 U.S. at 678-79; *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) ("The critical question is whether the claim, viewed holistically, is made plausible by 'the cumulative effect of the factual allegations' contained in the complaint." (quoting *Ocasio-Hernández*, 640 F.3d at 14)).

of an official decision if the official acted in good faith, without malice, and without corruption.'"

*Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 146 (1st Cir. 2016) (quoting *Nelson,* 446

Mass. at 537). "The rule is 'that [t]here is every presumption in favor of the honesty and sufficiency

of the motives actuating public officers in actions ostensibly taken for the general welfare.'" *Id.*

(quoting *S. Boston Betterment*, 438 Mass. at 69). But, as explained, Wood has adequately alleged

that Acting Chief Haugh and Chief Pistone acted with malice. They are not, therefore, entitled to

common-law immunity on Wood's tortious interference claim at this juncture, and the motion to

dismiss will be denied with respect to the claim.

### III.   **Defamation.**

Wood's third claim alleges that Acting Chief Haugh, Chief Pistone, and the Wenham

Police Department defamed him by "ma[king] and distribut[ing] knowingly false, harmful

statements about Plaintiff's character to others, including the Town of Wenham, and members of

the press." ECF 1, ¶¶ 97-106. To state a claim for defamation, Wood must plausibly allege "that

(1) the defendant[s] published a defamatory statement of and concerning [him]; (2) the statement

was a false statement of fact (as opposed to opinion); (3) [they were] at fault for making the

statement, and any privilege that may have attached to the statement was abused; and (4) [he]

suffered damages as a result, or the statement was of the type that is actionable without proof of

economic loss." *Lawless v. Estrella*, 99 Mass. App. Ct. 16, 18-19 (2020). "To properly allege

defamation, [Wood] must specifically identify the allegedly false statement." *Kelleher*, 98 Mass.

App. Ct. at 53 n.2 (citing *Flagg v. AliMed, Inc.*, 466 Mass. 23, 37-38 (2013)).

Acting Chief Haugh and Chief Pistone contend that Wood's defamation claim must be

dismissed because it fails to identify any specific false statement. But the complaint alleges that

these defendants, in their individual capacities,[7] "distributed the false information contained in the 2013 background report," and that the report contained statements that were not "supported by evidence." ECF 1, ¶¶ 17, 99. In particular, the report included allegedly inaccurate statements about (1) a 2008 instant message conversation, (2) Wood's use of "inappropriate words in a private conversation," and (3) his "misconduct as an employee of Merrimack College and Regis College as well as in a [Municipal Police Training Committee] class." *Id.* ¶ 17. Although the question is close, at this stage of the proceedings, these allegations are sufficient to state a claim of defamation against Acting Chief Haugh and Chief Pistone.

Chief Pistone and Acting Chief Haugh next argue that, to the extent the defamation claim is asserted against them in their official capacities, they are entitled to "a conditional or qualified privilege [that] applies to statements made by public officials in the performance of their official duties." *Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 630 (2012). This conditional privilege recognizes that the "threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." *Mulgrew v. Taunton,* 410 Mass. 631, 635 (1991). The privilege can be lost, however, "if (1) there is 'unnecessary, unreasonable or excessive publication,' and the defendant recklessly published the defamatory statements; (2) the defendant published the defamatory statements with knowledge of their falsity or with reckless disregard of the truth; or (3) the defendant acted with actual malice." *Lawless*, 99 Mass. App. Ct. at 24 (quoting *Barrows*, 82 Mass. App. Ct. at 631).

---

[7] As with the tortious interference claim, the Court construes the complaint as asserting a defamation claim against Acting Chief Haugh and Chief Pistone in their individual capacities. As discussed, "individual defendants in their official capacities are immune from intentional tort claims" under M.G.L. c. 258, § 10(c), *Nelson*, 446 Mass. at 537 n.9 (2006), and Acting Chief Haugh and Chief Pistone did not raise such immunity as a defense, *see* ECF 11, at 16-17.

Wood has pleaded sufficient facts to overcome the conditional privilege at this stage in the proceedings. He alleges that Acting Chief Haugh and Chief Pistone "made and distributed knowingly false, harmful statements," and that they both "had reason to believe this information was false as former Chief DeNaro[,] their immediate predecessor, had at the time and reaffirmed since that the 2013 background report was inaccurate." ECF 1, ¶¶ 98, 100. Their motion to dismiss Wood's defamation claim is, accordingly, denied. *See Disend v. Meadowbrook Sch.*, 33 Mass. App. Ct. 674, 677 (1992) (reversing dismissal of defamation claim relying on the conditional privilege because "[t]he complaint negate[d] the lawful exercise of a conditional privilege by alleging that what the [defendant] had said about [the plaintiff] was false and malicious"); *Taylor v. Town of Freetown*, No. 3-cv-12417-PBS, 2006 WL 8458099, at *8 (D. Mass. Jan. 31, 2006) ("A motion to dismiss . . . is not the correct vehicle to attack a plaintiff's defamation claim by asserting a conditional privilege." (quotation marks omitted)).

Wood's defamation claim against Wenham, however, will be dismissed because the town is immune from liability. The MTCA carves out from liability "any claim arising out of an intentional tort, including . . . libel [or] slander" from its waiver of sovereign immunity. M.G.L c. 258, § 10(c); *see Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 284 (1985) ("There is no case law in this Commonwealth holding municipalities liable for the intentional torts of their employees."). A town like Wenham thus retains immunity from defamation claims because "the Legislature has determined that both species of defamation, libel and slander, are intentional torts for the purposes of § 10(c)." *Barrows*, 82 Mass. App. Ct. at 630. Accordingly, Wood's defamation claim against Wenham is barred by the MTCA.

**IV.** **Wrongful Termination and M.G.L. Chapter 31 Claims.**

Wood's fourth and fifth claims allege, respectively, that he was wrongfully terminated in violation of public policy and that his termination did not comport with the procedural protections afforded to civil service employees under Chapter 31 of the Massachusetts General Laws. Wood's theory of the wrongful termination claim is that the defendants violated public policy by "immediately removing him from duty and ultimately terminating" his employment because he hired legal counsel. ECF 1, ¶¶ 108-10. His theory of his Chapter 31 claim is that he did not receive the notice and opportunity for a hearing guaranteed by M.G.L. c. 31, § 41. *Id.* ¶¶ 112-14.[8] Whether these claims are plausibly alleged turns in part on whether the defendants are subject to the requirements of the civil service system and, if so, whether Wood was a "tenured employee" entitled to civil service protections under Chapter 31.

A.     Chapter 31 Claims.

The Civil Service Commission has jurisdiction to consider challenges to the discharge of tenured civil service employees. *See Bd. of Selectmen of Brookline v. Smith*, 58 Mass. App. Ct. 813, 815 (2003). Under M.G.L. c. 31, §§ 41 and 43, "a civil service 'tenured employee' may be terminated only for just cause and in accordance with certain procedural protections including written notice, a hearing, and an opportunity to appeal to the commission." *City of Springfield v. Civ. Serv. Comm'n*, 469 Mass. 370, 375-76 (2014). A "tenured employee" is defined as "a civil service employee who is employed following (1) an original appointment to a position on a

---

[8] Section 41 provides, in pertinent part, that "[e]xcept for just cause . . . , a tenured employee shall not be discharged . . . without his written consent," and that "[b]efore such action is taken, such employee shall be given a written notice by the appointing authority, which shall include the action contemplated [and] the specific reason or reasons for such action . . . , and shall be given a full hearing concerning such reason or reasons before the appointing authority or a hearing officer designated by the appointing authority." M.G.L c. 31, § 41.

permanent basis and the actual performance of the duties of such position for the probationary period required by law or (2), a promotional appointment on a permanent basis." M.G.L. c. 31, § 1. Further, a person who has been originally appointed "as a permanent full-time police officer or fire fighter in a city, or in a town where the civil service law and rules are applicable to such position" must "actually perform the duties of such position on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee." M.G.L. c. 31, § 61. An employee terminated during the probationary period is entitled to written notice that "stat[es] in detail the particulars wherein his conduct or capacity or the character or quality of his work is not satisfactory," M.G.L. c. 31, § 34, but is not entitled to the civil service protections set forth in M.G.L. c. 31, § 41. *See Costa v. Bd. of Selectmen of Billerica*, 377 Mass. 853, 861-62 (1979); *Bd. of Selectmen of Brookline*, 58 Mass. App. Ct. at 815; *Fermin v. Mayor of the City of Lawrence*, 99 Mass. App. Ct. 1109, *2-3 (2021) (Rule 23 decision).

The parties dispute whether Wood was a "tenured employee" of the Haverhill Police Department.[9] Wood alleges that he was sworn in as a full-time officer for Haverhill on April 22, 2021, and that he received a waiver that entitled him to serve as a full-time officer until December 12, 2021, to afford him time to attend the Bridge Academy. ECF 1, ¶¶ 30-31; ECF 11-2. But, Wood also alleges, because Acting Chief Haugh removed him from the full-time schedule in May 2021, he has not worked a single shift as a full-time officer for the Haverhill Police Department.

---

[9] At the hearing on the motion to dismiss, the Haverhill defendants contended that Wood was not a tenured employee of the Haverhill Police Department. This argument is in tension with the argument made in the Haverhill defendants' brief—namely, that Wood's wrongful termination and Chapter 31 claims should be dismissed under the doctrine of primary jurisdiction because Wood was required, in the first instance, to present both claims to the Civil Service Commission. ECF 11, at 18-19. The latter argument assumes that Wood *was* a tenured employee, because otherwise the Commission would not have jurisdiction over his claims. The Court addresses the latter argument below. *See infra* note 10.

ECF 1, ¶¶ 33-34, 43, 47, 52. Drawing all inferences in favor of Wood, as the Court must on a motion to dismiss, he was appointed as a "permanent full-time police officer" on April 22, 2021, whereupon he began his probationary period. M.G.L. c. 31, § 61. But because he never "actually perform[ed] the duties of such position on a full-time basis," *id.*, Wood remained on probationary status until, as he alleges, Haverhill terminated his employment, *see* ECF 1, ¶ 52. Thus, the facts alleged in the complaint do not support Wood's legal assertion that he was entitled to the protections of the civil service law and regulations, because he never became a "tenured employee" of Haverhill under M.G.L. c. 31, §§ 1, 34, and 61. *See Bd. of Selectmen of Brookline*, 58 Mass. App. Ct. at 817 (the statutory phrase "'actual performance of the duties of such position'" refers to an officer who has graduated from the training academy and has "the authority to exercise police powers, as distinct from the student officer, who is in the process of learning to exercise such powers properly"). And that, in turn, requires dismissal of Wood's claim alleging that the Haverhill defendants violated the protections afforded to tenured civil servants under M.G.L. c. 31, § 41.[10]

Wood's Chapter 31 claims against the Wenham defendants also fails as a matter of law, but for a different reason. The Wenham Police Department, unlike the Haverhill Police

---

[10] Even if Wood *was* a tenured civil servant entitled to the protections of the civil service law and regulations, his Chapter 31 claim against the Haverhill defendants would still be subject to dismissal. "'Where an agency has statutorily been granted *exclusive* authority over a particular issue, the doctrine of primary jurisdiction requires that a court refer the issue to the agency for adjudication in the first instance.'" *Malden Police Patrolman's Ass'n v. Malden*, 92 Mass. App. Ct. 53, 58 (2017) (quoting *Fernandes v. Attleboro Hous. Auth.*, 470 Mass. 117, 121 (2014)) (emphasis in original). The Supreme Judicial Court has explained that where "an employee's claims focus . . . on an employer's failure to satisfy the requirements of G.L. c. 31, § 41," that "employee is . . . required to proceed before the" Civil Service Commission. *Fernandes*, 470 Mass. at 124. Wood's complaint faults the Haverhill defendants for their alleged noncompliance with M.G.L. c. 31, § 41. *See* ECF 1, ¶¶ 80-81, 112-14; ECF 19, at 14-15. Application of the doctrine of primary jurisdiction would, accordingly, result in dismissal of Wood's Chapter 31 claim. *See J. & J. Enterprises, Inc. v. Martignetti*, 369 Mass. 535, 540 (1976) (the doctrine of primary jurisdiction "ordinarily results in dismissal of judicial proceedings begun without prior resort to the agency" when the claim is "within the exclusive jurisdiction of an administrative agency").

Department, is not subject at all to the civil service system or the requirements of Chapter 31. *See* ECF 22-1[11]; M.G.L. c. 31, §§ 48, 51-53 (setting forth the offices and position covered by the civil service law); Final Report, *Special Legislative Commission to Study and Examine the Civil Service Law, Personnel Administration Rules, Hiring Procedures and By-Laws for Municipalities not Subject to the Civil Service Law and State Police Hiring Practices*, at 12 (March 30, 2022) ("Among the 351 municipalities in the Commonwealth, 142 public safety departments are subject to the provisions of Chapter 31, in whole or in part."). Because Chapter 31 does not apply to Wenham, Wood's claim against the Wenham defendants for violations of M.G.L. c. 31, § 41 must be dismissed. *See Orne v. Civil Service Comm'n*, 51 Mass. App. Ct. 1106, at *2 (2001) (Rule 1:28 decision) (affirming dismissal of claim alleging noncompliance with civil service statute where plaintiff was not employed by municipal police department subject to the civil service law and regulations).[12]

---

[11] The Court takes judicial notice of an exhibit appended to the Wenham defendants' motion to dismiss brief, namely, a state government website that lists municipal "police departments covered by civil service and age requirements." ECF 22-1 (Civil Service Police Departments, https://www.mass.gov/info-details/civil-service-police-departments (last updated Sept. 10, 2024)); *see Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) (matters of public record are subject to judicial notice); *Alston v. Town of Brookline, Massachusetts*, No. 15-cv-13987-GAO, 2017 WL 1536213, at *1 n.2 (D. Mass. Apr. 26, 2017), *aff'd sub nom. Alston v. Spiegel*, 988 F.3d 564 (1st Cir. 2021) (taking judicial notice of Town of Brookline's website). The list does not include the Wenham Police Department. ECF 22-1.

[12] Wood asks the Court to take judicial notice of an exhibit, appended to his opposition to the Wenham defendants' motion to dismiss, that appears to be internal guidelines for the Wenham Police Department effective March 1, 2013. *See* ECF 27-1. Assuming that this exhibit is an "official public recor[d]" that may be considered on a motion to dismiss, *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), its brief references to Chapter 31 do not indicate that the Wenham Police Department is subject to the civil service law and regulations or alter the conclusion that the Wenham Police Department is exempt from those rules. *See* ECF 27-1, at 25-26.

B.     Wrongful Termination Claims.

Wood does not dispute that, if he is not entitled to the procedural protections of Chapter 31, he should be regarded as an at-will employee of Haverhill and Wenham for purposes of his wrongful termination claim. "The well-established principle that 'an at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy' . . . is narrow." *Osborne-Trussell v. Children's Hosp. Corp.*, 488 Mass. 248, 265 (2021) (citation omitted). Such a claim will lie when an employee (1) "assert[s] a legally guaranteed right (e.g., filing a worker's compensation claim)," (2) "do[es] what the law requires (e.g., serving on a jury)," (3) "refus[es] to do that which the law forbids (e.g., committing perjury)," or (4) "perform[s] important public deeds," like cooperating with a criminal investigation, "even though the law does not absolutely require the performance of such a deed." *Meehan v. Med. Info. Tech., Inc.*, 488 Mass. 730, 733 (2021) (quotation marks and citations omitted and emphases removed). "Whether discharging an at-will employee for engaging in particular conduct violates public policy is a question of law for the court, and an at-will employee bears the burden of showing that it does." *Elliott-Lewis v. Abbott Lab'ys, Inc.*, 411 F. Supp. 3d 195, 208 (D. Mass. 2019).

For multiple reasons, as the defendants argue, Wood's wrongful termination claims must be dismissed. The theory of the claims, according to the complaint, is that the defendants violated public policy by "immediately removing [Wood] from duty and ultimately terminating" his employment in retaliation for his hiring of legal counsel. ECF 1, ¶¶ 108-10. But the complaint alleges that the Haverhill and Wenham defendants took adverse employment action against Wood *before* he hired legal counsel, and that they did so for reasons other than his retention of legal counsel. Specifically, it alleges that Wood was taken off the full-time schedule by the Haverhill Police Department and notified that Haverhill "would not be honoring the agreement . . . to employ

him as a full-time officer" in May and early June of 2021, before he engaged an attorney in mid-June 2021, and that these actions were taken because of the 2013 background report. ECF 1, ¶¶ 33-38, 41, 44-45, 59. It likewise alleges that the Wenham defendants put Wood on administrative leave, and asked him to return his gun and badge, in December 2022, in response to receiving information related to the 2013 background report. ECF 1, ¶¶ 63-65. Only after those events, the complaint alleges, did Wood hire counsel to interact with the Wenham Police Department. *Id.* ¶ 67. Thus, the well pleaded facts do not give rise to a plausible inference that the defendants removed Wood from duty and later terminated him because he secured legal representation.

Even absent the mismatch between Wood's wrongful termination theory and the allegations in the complaint, Wood does not explain how his removal from duty and subsequent terminations violated a public policy that is "well defined, important, and preferably embodied in a textual law source." *Ryan v. Holie Donut, Inc.*, 82 Mass. App. Ct. 633, 636 (2012). He cites no precedent or statute recognizing that he had a "legally guaranteed right" to counsel in his employment disputes with Haverhill and Wenham. *Meehan*, 488 Mass. at 733. To the contrary, the 2013 internal guidelines for the Wenham Police Department, attached as an exhibit to Wood's opposition to the motion to dismiss, provide that, "[i]n conducting internal administrative investigations, in the absence of a collective bargaining agreement,[13] there is no legal obligation

---

[13] Wood alleges that he was covered by a collective bargaining agreement with respect to his position with Haverhill, *see* ECF 1, ¶¶ 88-89, but does not attach a copy of that agreement. Wood does not allege that he was covered by a collective bargaining agreement with respect to his position with Wenham. The Haverhill defendants have separately contended that Wood's wrongful termination claim must be dismissed because he failed to exhaust the grievance procedures required by his collective bargaining agreement. *See Malden*, 92 Mass. App. Ct. at 59 ("Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct[ly] to court for redress against the employer." (quotation marks omitted)). But the Haverhill defendants did not submit to the Court a copy of that agreement, and the parties dispute whether the agreement mandated a grievance process. Because Wood's wrongful termination claim fails for independent reasons, the Court will not address the Haverhill defendants' exhaustion argument.

for the police department to provide department employees with an opportunity to consult with an attorney before being questioned on work-related matters." ECF 27-1, at 17. The Court need not determine, as a general matter, whether the alleged termination of an employee following retention of legal counsel is contrary to public policy. It is enough to conclude that where Wood has failed to meaningfully brief the issue or cite any supportive statute or precedent, he has not met his burden to show that the reasons for his discharge "bea[r] a direct connection to a sufficiently important and clearly defined public policy that warrants his protection from termination." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 90 (1st Cir. 2016). The Haverhill and Wenham defendants' motions to dismiss will, accordingly, be granted with respect to the wrongful termination claim.

## V.   **Constitutional Claims.**

Asserting claims under 42 U.S.C. § 1983, Wood next contends that the defendants violated his First, Fourth, and Fourteenth Amendment rights through their conduct "concerning the implementation of background checks and the continued use of the 2013 background report in their employment decisions." ECF 1, ¶¶ 116-19.

The Town of Wenham argues, and the Court agrees, that the constitutional claims against it must be dismissed because Wood fails to allege the existence of an official unconstitutional policy. A "municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" because "*[r]espondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). The municipality "can be liable for constitutional violations only if the violation occurs pursuant to an official policy," *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008), which "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Wood must, therefore, allege "both the existence of a policy . . . and a causal link between that policy and the constitutional harm." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989). He has failed to do so. His conclusory references to Wenham's "policies"—without specifying what those policies entail—are insufficient to state a plausible *Monell* claim against Wenham. ECF 1, ¶¶ 117, 119; *see, e.g.*, *Malachowski v. City of Keene*, 787 F.2d 704, 711 (1st Cir. 1986) ("Since appellants have alleged no such city policy . . . , their claims against the City of Keene and its Police Department were properly dismissed."); *del Rosario on behalf of Burke v. Nashoba Reg'l Sch. Dist.*, 502 F. Supp. 3d 623, 636 (D. Mass. 2020) (dismissing section 1983 claim against school district that relied on "conclusory and vague allegations" of a policy or custom).

Chief DiNapoli and, separately, Haverhill, Acting Chief Haugh, and Chief Pistone contend that Wood fails to state any plausible violation of the First, Fourth, and Fourteen Amendments. To the extent they are sued in their individual capacities, the police chiefs additionally invoke qualified immunity as a defense to Wood's constitutional claims. The doctrine of qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts engage in a two-prong test to determine whether defendants are entitled to qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong "asks whether the facts . . . 'show the officer's conduct violated a [federal] right.'" *Id.* at 655-56 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong "asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would

understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation marks omitted). The "officer may be entitled to immunity based on either prong." *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022).

Wood has failed to allege facts that demonstrate a plausible entitlement to relief on any of his constitutional claims. Wood asserts, in opposing the motions to dismiss, that his First Amendment claim is premised on the defendants' alleged retaliation for the speech in the 2008 instant messages, which were, in turn, discussed in the 2013 background report. The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). When, for example, "an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 273 (2016). In cases, as here, in which the plaintiff was a public employee, the plaintiff must allege that his "protected speech related to a 'matte[r] of public concern' . . . and was a 'substantial or motivating factor' in the adverse employment consequence." *Stuart v. City of Framingham, Massachusetts*, 989 F.3d 29, 35 (1st Cir. 2021) (citations omitted). "If the employee did not speak as a citizen on a matter of public concern, the inquiry ends there and 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" *MacRae v. Mattos*, 106 F.4th 122, 133 (1st Cir. 2024) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)) (the *Garcetti* framework applies to claims by public employees asserting retaliation based on pre-employment speech).

The complaint asserts, without elaboration, that the defendants' conduct violated the First Amendment. ECF 1, ¶ 118. Wood's opposition briefs add that his 2008 instant messages to a

former classmate included his "unverified . . . negative comments about the Mayor of the City of Haverhill." ECF 19, at 15-16; ECF 27, at 11. He argues, in turn, that Haverhill and Wenham's reliance on those messages "effectively led to his termination and gives rise to a claim under the First Amendment and 42 U.S.C. § 1983." ECF 19, at 16; ECF 27, at 11. But the factual assertions about the content of Wood's 2008 messages are not alleged in the complaint, and "a party cannot amend its Complaint by assertions made in briefs." *Calvary Chapel of Bangor v. Mills*, 542 F. Supp. 3d 24, 37 (D. Me. 2021), *aff'd*, 52 F.4th 40 (1st Cir. 2022); *see Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005) ("additional allegations" against defendants made in plaintiffs' opposition to the motions to dismiss "are not properly before us"). At most, the complaint alleges that Wood "used inappropriate words" in his 2008 instant messages. ECF 1, ¶ 17. Within the four corners of the complaint, Wood does not allege facts to support any allegation that, in those instant messages, he spoke "as a citizen on a matter of public concern." *McRae*, 106 F.4th at 133. He has, therefore, failed to state a claim that the defendants retaliated against his protected speech in violation of his First Amendment rights.

Wood's Fourth Amendment claim fares no better. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Subject to certain exceptions, the Amendment generally "requires police officers to secure a search warrant supported by probable cause prior to effecting a search or seizure." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013). The Court understands Wood to assert that Haverhill's receipt of his 2008 instant messages as part of its criminal investigation into his classmate offended the Fourth Amendment. But he has failed to allege any facts that could support a plausible inference that Haverhill's receipt of those messages was the result of an unlawful search. The complaint alleges only that Haverhill obtained the

messages as part "of an unrelated investigation into [his] former classmate." ECF 1, ¶ 18. It is silent on whether there was a warrant to obtain the messages of Wood's classmate and, if so, what the scope of that warrant was and whether it was supported by probable cause. Nor does the complaint allege that the criminal investigation was in any way improper.[14] Wood's conclusory assertion of a Fourth Amendment violation is not adequate to sustain a plausible Fourth Amendment claim. *See Cline v. Burke*, No. 22-cv-40115-FDS, 2023 WL 4493497, at *5 (D. Mass. July 12, 2023) (dismissing Fourth Amendment claim making "a conclusory declaration: 'Warrant without probable cause'" because the complaint "fail[ed] to provide further allegations or identify which of the 19 defendants violated plaintiff's Fourth Amendment rights, or how those rights were violated").

Wood's barebones Fourteenth Amendment claim also fails as a matter of law. In opposing the Haverhill defendants' motion, Wood asserts that he intended to raise a procedural due process challenge to Haverhill's reliance on the 2013 background report, which should have been destroyed in 2014 in accordance with the MOU, as a basis for terminating his employment. ECF 19, at 17. And in opposing the Wenham defendants' motion, he asserts that the Town violated his procedural due process rights by failing to provide him "notice about this investigation as required by both departmental policy and Civil Service law," but does not identify any specific departmental policy. ECF 27, at 12.

---

[14] Wood's briefs in opposition to the motions to dismiss argue that "the search and use of these conversations against [him] went beyond a reasonable scope" because, in his telling, the conversations were not related to the criminal investigation into his classmate and "had nothing to do with the underlying charge." ECF 19, at 16; ECF 27, at 11-12. But again, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Diaz-Zayas v. Municipality of Guaynabo*, 600 F. Supp. 3d 184, 195 (D.P.R. 2022) (citation omitted); *see Willitts v. Life Ins. Co. of N. Am.*, No. 18-cv-11908-ADB, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) (collecting cases).

"To establish a procedural due process violation, [Wood] 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)). "[A]n action for deprivation of property by state action without due process of law must include a showing that state law protects an identified property right said to have been violated." *Caesars Massachusetts Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 331-32 (1st Cir. 2015) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972)).

Wood has not identified, in the complaint or his briefing, any liberty or property interest protected by Massachusetts law. As an officer on probationary status for Haverhill and a reserve officer for Wenham at the time of his termination, Wood did not have a property interest, protected by Massachusetts law, in his continued employment. *See, e.g.*, *Caesars Massachusetts Mgmt. Co.*, 778 F.3d at 333 ("Massachusetts courts have consistently held that some sort of for-cause termination provision is necessary in order for a contractual benefit of continued employment to qualify as 'protected property' for purposes of due process." (collecting cases)); *Fontana v. Comm'r of Metro. Dist. Comm'n*, 34 Mass. App. Ct. 63, 64 (1993) ("a provisional employee does not have a statutory basis for claiming a property interest in continued employment" (citing *Stetson v. Bd. of Selectmen of Carlisle*, 369 Mass. 755, 759-760 (1976))).

At the motion hearing, Wood suggested that he may have a protected property interest in his contract—the MOU—with Haverhill. While government contracts can, in some circumstances, give rise to protected property interests, "the critical enquiry is whether the aggrieved party to the contract has a legitimate claim of 'entitlement' to the benefits of the contract that government action may not abridge." *Caesars Massachusetts Mgmt. Co.*, 778 F.3d at 333 (citing *Allen v. Bd.*

*of Assessors of Granby*, 387 Mass. 117, 119-20 (1982)). And Wood does not explain how the MOU gave him a legitimate claim of entitlement to any particular benefit aside from his continued employment which, as discussed, is not in this case a property interest protected by state law. The MOU does appear to guarantee Wood two weeks' notice before Haverhill could release information about him that was "required to be produced for any reason," ECF 11-1, but to the extent Wood claims that Haverhill failed to comply with that provision, his breach of contract claim against Haverhill is an adequate post-deprivation remedy. *See Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) ("[I]f a state provides adequate postdeprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation.").

Wood's failure to assert plausible constitutional claims requires dismissal of Count VI as against the City of Haverhill and its police department, and as to Chief DiNapoli, Acting Chief Haugh, and Chief Pistone, who are also entitled to qualified immunity on the claims. With respect to those individual defendants, even if Wood had alleged plausible constitutional violations, he has not demonstrated that the right at issue was clearly established at the time that the defendants engaged in the alleged misconduct. He has not "identified a single precedent finding a [constitutional] violation under similar circumstances," *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 14 (2021), or "demonstrate[d] that 'an objectively reasonable official in the defendant[s'] position would have known that [their] conduct violated that rule of law,'" *Gray v. Cummings*, 917 F.3d 1, 10 (1st Cir. 2019) (quoting *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017)). Wood's constitutional claims will, accordingly, be dismissed.

## VI.    <u>Claim Under 42 U.S.C. § 1985.</u>

Wood's seventh claim alleges that the defendants violated 42 U.S.C. § 1985 by "conspir[ing] to deprive" him of his First, Fourth, and Fourteenth Amendment rights through improper conduct that led to his discharge from the Haverhill and Wenham Police Departments. ECF 1, ¶¶ 120-24. Section 1985 prohibits "two or more persons in any State or Territory [from] conspir[ing to] . . . depriv[e],  either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To establish a viable claim under the statute, a plaintiff "must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)).

Wood's section 1985 claim falters at the outset because he does not adequately allege the existence of a conspiracy. "To plead such a conspiracy, a plaintiff 'must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights.'" *Id.* at 577-78 (quoting *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019)). "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." *Parker*, 935 F.3d at 18. Wood fails to allege any facts to support his conclusory assertion that the Haverhill and Wenham defendants "conspired" against him. ECF 1, ¶¶ 122-23; *see Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) ("[C]omplaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."). He does not, for example, offer any "specifics as to the nature of

their joint effort or the formation of their agreement." *Alston*, 988 F.3d at 578. Absent any non-conclusory factual allegations of conspiracy, Wood's section 1985 claim cannot survive. *See Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (upholding dismissal where the complaint "neither elaborate[d] nor substantiate[d] its bald claims that certain defendants 'conspired' with one another").

The claim also falters because Wood fails to allege the requisite "'racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Pérez-Sánchez*, 531 F.3d at 107 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). To satisfy this requirement, a plaintiff must plead "facts showing that (1) the defendants conspired against [him] because of [his] membership in a class, and (2) the criteria defining the class are invidious." *Aulson v. Blanchard*, 83 F.3d 1, 4 (1st Cir. 1996). The complaint lacks any allegation that the defendants' purported conspiracy was motivated by racial or class-based discriminatory animus against Wood. *See Romero-Barcelo v. Hernandez Agosto*, 75 F.3d 23, 34-35 (1st Cir. 1996) (affirming dismissal of section 1985(3) claim where there was "no articulation of a 'clear class-based invidious discriminatory animus behind the alleged actions of the alleged conspirators'" (citation omitted)). Wood's section 1985 claim will, accordingly, be dismissed.

## VII.   Claim Under M.G.L c. 214, § 1B.

Wood's eighth claim alleges that the defendants violated his privacy rights under M.G.L. c. 214, § 1B, by unreasonably disclosing the contents of his 2013 background investigation, as well as "personal information," including his psychological evaluations. ECF 1, ¶¶ 58, 125-33.[15] Section 1B provides that "[a] person shall have a right against unreasonable, substantial or serious

---

[15] As with the intentional interference and defamation claims, and for the same reasons, the Court construes the complaint as asserting the invasion of privacy claim, an intentional tort, against the named individual defendants in their individual, rather than official, capacities.

interference with his privacy." M.G.L. c. 214, § 1B. Consistent with the text of the statute, "[t]o sustain a claim for invasion of privacy [under G.L. c. 214, § 1B], the invasion must be both unreasonable and substantial or serious." *Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793 (2015) (quoting *Nelson*, 446 Mass. at 536). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," *Polay v. McMahon*, 468 Mass. 379, 383 (2014), "legitimate countervailing business interests in certain situations may render the disclosure of personal information reasonable and not actionable under the statute," *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 520 (1984).

The Town of Wenham contends, correctly, that Wood's invasion of privacy claim against the town, like his defamation claim, is barred by the MTCA, which preserves municipal immunity for "any claim arising out of an intentional tort, including . . . invasion of privacy." M.G.L c. 258, § 10(c). The claim for invasion of privacy under Section 1B against Wenham will therefore be dismissed. *See Nelson*, 446 Mass. at 537 (explaining that while public employers cannot be sued for their employees' intentionally tortious conduct because of M.G.L c. 258, § 10(c), "public employees may be personally liable for their intentionally tortious conduct under G.L. c. 214, § 1B"); *Spring*, 394 Mass. at 286 (affirming dismissal of invasion of privacy claim "because public employers are immune from such suits").[16]

Chief DiNapoli, for his part, argues that the Section 1B claim against him must be dismissed because he is entitled to common-law immunity, which, as discussed, protects public officials from liability "for negligence or other error in the making of a discretionary decision within the scope of their authority, so long as they act 'in good faith, without malice and without

---

[16] Haverhill does not invoke M.G.L c. 258, § 10(c) as a defense to the claim against it under M.G.L. c. 214, § 1B.

corruption.'" *Cachopa v. Town of Stoughton*, 72 Mass. App. Ct. 657, 665 (2008) (quoting *Gildea v. Ellershaw*, 363 Mass. 800, 820 (1973)). Bad faith, according to the Supreme Judicial Court, "imports a dishonest purpose or some moral obliquity," "implies conscious doing of wrong," and "means a breach of a known duty through some motive of interest or ill will." *Spiegel v. Beacon Participations*, 297 Mass. 398, 416 (1937). At this preliminary stage in the litigation, Wood has alleged sufficient facts to plausibly plead bad faith. Specifically, he alleges that Chief DiNapoli "disclosed the [2013] report to the public domain," even though it "contained defamatory allegations" that he knew "to be false" and he lacked a "legitimate need to disclose the report." ECF 1, ¶¶ 129, 131-32. Chief DiNapoli is not, therefore, shielded from liability at this juncture based on common-law immunity.

Haverhill, Acting Chief Haugh, and Chief Pistone seek dismissal of the invasion of privacy claim on the ground that they properly disclosed the information contained in the 2013 background report to the Essex District Attorney's Office, as required by *Brady* and its progeny, because of Wood's continued employment as a Haverhill police officer. This argument is premised on the proposition that they had an affirmative duty, and thus a legitimate reason, to disclose the report, because the information contained in the report could be exculpatory in future criminal cases in which Wood might be called as a witness. The "duty of reasonable inquiry" requires prosecutors to "actively seek out any exculpatory evidence held by the Commonwealth or another member of the prosecution team," and "conduct a thorough investigation to determine the nature and extent" of alleged misconduct by a police officer. *Graham v. Dist. Att'y for Hampden Dist.*, 493 Mass. 348, 369 (2024); *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in a case, including the police"). On the other hand, prosecutors need not "investigate on behalf of defense

counsel"; rather, "their duty of inquiry follows from the duty to disclose all exculpatory evidence held by members of the prosecution team." *Graham*, 493 Mass. at 369; *see, e.g.*, *Commonwealth v. Wanis*, 426 Mass. 639, 643 (1998) (reversing order requiring the production of "documents from the police department's internal affairs division" because there was "no showing that the prosecutor had access to these materials, or that the police department was obliged to provide its investigative files to the prosecution"); *Commonwealth v. Tucceri*, 412 Mass. 401, 407 (1992) ("A prosecutor's duty . . . extends only to exculpatory evidence in the prosecutor's possession or in the possession of the police who participated in the investigation and presentation of the case.").

Assuming, without deciding, that the law imposed a duty on the Haverhill defendants to turn over adverse information about Wood in their possession to prosecutors, the Section 1B claim against them nevertheless survives the motion to dismiss. The complaint alleges that the Haverhill defendants knew that the purportedly "defamatory allegations" contained in the 2013 background report were false. ECF 1, ¶ 129. It also alleges that they disclosed "personal" information, including Wood's psychological evaluations. *Id.* ¶¶ 58, 128, 132. At this stage in the proceedings, those allegations are sufficient to plausibly allege an unreasonable, and substantial or serious, invasion of privacy. *See Ortiz*, 470 Mass. at 793. Whether the Haverhill defendants "acted for the legitimate purpose" of providing potentially exculpatory information to the District Attorney, as they contend, or intentionally delivered inaccurate information, as Wood alleges, is "a question of fact not suitable for resolution on a motion to dismiss." *Polay*, 468 Mass. at 384. Accordingly, Wood's invasion of privacy claim against the Haverhill defendants will not be dismissed.

**VIII.   Electronic Communications Privacy Act Claim.**

Finally, Wood claims that Haverhill and its police department violated Title I of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq*., by "intentional[ly],

knowing[ly], and willful[ly]" "disclos[ing] electronic communications in their release of the 2013 background report." ECF 1, ¶¶ 134-39. The ECPA "provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting 18 U.S.C. § 2511(1)(a) and citing 18 U.S.C. § 2520). Under the statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

To state a claim under Title I of the ECPA, Wood must allege that Haverhill "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device," *In re Pharmatrak*, 329 F.3d at 18, and (6) that the communication was "intercepted contemporaneously," *Boudreau v. Lussier*, 901 F.3d 65, 78 (1st Cir. 2018). There are, however, exceptions under the statute. For example, section 2516 "authorizes law enforcement officers to seek court orders to intercept communications in certain specific instances." *United States v. Conley*, 531 F.3d 56, 60 (1st Cir. 2008). And section 2517 "allows one officer to disclose information to another if it was intercepted 'by any means allowed in this chapter'" and "'to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.'" *Id.* at 59-60 (quoting 18 U.S.C. § 2517).

The Court agrees with Haverhill that Wood has not alleged a plausible entitlement to relief under the ECPA. Among other things, the complaint fails to allege that Haverhill intercepted Wood's 2008 instant messages while in transmission. Wood merely asserts that Haverhill "was only in possession of the alleged conversation because of an unrelated investigation into a former

34

classmate of" his. ECF 1, ¶ 18. It contains no facts to suggest that Haverhill "contemporaneously intercepted [Wood's] electronic communications." *Boudreau*, 901 F.3d at 79; *see Eagle Inv. Sys. Corp. v. Tamm*, 146 F. Supp. 2d 105, 113 (D. Mass. 2001) (dismissing ECPA claim where the plaintiff could not "show that the email acquisition occurred during transmission, an essential element"); *Thompson v. Thompson*, No. 02-cv-91-M, 2002 WL 1072342, at *3 (D.N.H. May 30, 2002) (dismissing ECPA claim because "[n]owhere in [the] complaint does plaintiff mention any act by defendants that meets the 'during-transmission' requirement necessary to allege the interception of an electronic communication"). Wood also fails to allege that his instant messages were improperly intercepted by law enforcement officers. The complaint admits that Haverhill obtained those messages as part "of an unrelated investigation into [his] former classmate," ECF 1, ¶ 18, and does not allege that Haverhill's interception or disclosure of the messages was outside the scope of ECPA's law enforcement exceptions, *see* 18 U.S.C. §§ 2516-18. The ECPA claim will, accordingly, be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, Haverhill's motion to dismiss, ECF 10, and Wenham's motion to dismiss, ECF 21, are GRANTED in part and DENIED in part as follows:

1. Count I is dismissed as to Acting Chief Haugh, Chief Pistone, and the Haverhill Police Department, but not as to the City of Haverhill.

2. Count II remains in its entirety.

3. Count III is dismissed as to the Town of Wenham and the Wenham Police Department, but not as to Acting Chief Haugh or Chief Pistone.

4. Counts IV, V, VI, and VII are dismissed as to all defendants.

5. Count VIII is dismissed as to the Town of Wenham and the Wenham Police Department, but not as to the City of Haverhill, the Haverhill Police Department, Chief DiNapoli, Acting Chief Haugh, and Chief Pistone.

6. Count IX is dismissed as to all defendants.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: September 13, 2024                    UNITED STATES DISTRICT JUDGE